## FREEMAN v. SMITH.
### No. 6150.

Circuit Court of Appeals, Ninth Circuit.
Nov. 24, 1930.

H. L. Faulkner, of Juneau, Alaska, and John G. Lund and Martin J. Lund, both of Seattle, Wash., for appellant.

John Rustgard, Atty. Gen., for appellee.

Pillsbury, Madison & Sutro, F. D. Madison, and Francis Gill, all of San Francisco, Cal., amici curiæ.

Before RUDKIN and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

RUDKIN, Circuit Judge.

This case involves the validity of section 2 of chapter 96 of the Laws of Alaska, 1929, which exacts an annual license fee of $250 from nonresident fishermen who use hook and line in trolling, as against a license fee of $1 for resident fishermen. It appears from the allegations of the complaint that the plaintiff is a citizen of the United States and a resident of Tacoma, in the state of Washington; that for many years last past he has been engaged in the business of fishing for salmon in the territorial waters of Alaska and was licensed so to do by the treasurer of the territory; that during that period his average catch of salmon each year did not exceed $500 in value, and his catch was equal to the average catch made by other members of the trolling fleet; that the territorial act above mentioned discriminates against nonresident trollers in favor of resident trollers; and that the license fee exacted is exorbitant, unreasonable, and prohibitive, in view of the fact that the quantity of salmon which may be caught in the territorial waters of Alaska during any season is speculative, and the requirements of a license fee of $250, with expenses of operation added, will not leave reasonable compensation for the time and labor expended and for the depreciation of equipment. The relief sought was an injunction against the treasurer of the territory, enjoining him, his deputies, agents, employees, and servants, from attempting to collect the license fee referred to, by distraint or otherwise, and that the act in question be declared null and void. The court below sustained a general demurrer to the complaint for want of sufficient facts, and entered a decree of dismissal. From that decree the plaintiff has appealed.

We are not now concerned with the almost unlimited power possessed by the several states over the fish and game within their borders, nor are we particularly concerned with the legislative authority of a territory when limited only by the rightful subject of legislation clause usually found in Organic Acts. The question here is: Does the territorial act of 1929 deny to citizens of the United States rights guaranteed to them by the laws of the United States? and we are constrained to hold that it does.

For the purpose of protecting and conserving the fisheries of the United States in all waters of Alaska, the Act of June 6, 1924 (43 Stat. 464 [48 USCA § 221 et seq.]), provides that the Secretary of Commerce may from time to time set apart and reserve fishing areas in any of the waters of Alaska over which the United States has jurisdiction, and within such areas may establish closed seasons during which fishing may be limited or prohibited; that he may fix the size and character of nets, boats, traps, or other gear and appliances, limit the catch of fish to be taken from any area and make such regulations as to time, means, methods, and extent of fishing as he may deem advisable. From and after the creation of any such fishing area and during the time fishing is prohibited therein, it shall be unlawful to fish therein, or to operate therein any boat, seine, trap, or other gear or apparatus for the purpose of taking fish, and when fishing is permitted it shall only be carried on during the time, in the manner, to the extent, and in conformity with such rules and regulations. It is then provided that the rules and regulations shall be of general application; that no exclusive or several right of fishery shall be granted

therein; and that no citizen of the United States shall be denied the right to take, prepare, cure, or preserve fish or shellfish in any area of the waters of Alaska where fishing is permitted by the Secretary of Commerce.

It will thus be seen that the right to take, prepare, cure, or preserve fish or shellfish in any area of the waters of Alaska, where fishing is permitted by the Secretary of Commerce, is guaranteed to every citizen of the United States without reservation, whether he be a resident of Alaska or not; and the right so granted cannot be impaired or destroyed by the legislative assembly of the territory. If it can, the grant is an idle and empty one at best. Nor is the right thus conferred in anywise impaired by the last section of the act, which provides in general terms that nothing therein contained shall abrogate or curtail the powers granted the territorial Legislature to impose taxes or licenses nor limit or curtail any powers granted the territorial Legislature by the Organic Act.

The facts well pleaded in the complaint must be taken as true, and from them it appears that if a citizen of the United States engages in fishing, by trolling, in Alaskan waters, for commercial purposes, for only half the season, or less, the entire value of his catch must go into the territorial treasury, and if he engages in fishing throughout the entire season, with average luck, one-half the value of his entire catch must go in the same way. Indeed, the right to fish may be so far restricted by the Secretary of Commerce that a fisherman will never be able to earn the amount of the license fee. Under such circumstances it is almost needless to say that, if the territorial act is valid, the right granted by Congress to citizens of the United States has been destroyed by the territorial Legislature through the imposition of exorbitant and prohibitive license fees.

The naked power to impose taxes and licenses, or to make reasonable discrimination between residents and nonresidents, is not involved. On the contrary, the territory, under the guise of taxation, has attempted to destroy a right conferred by Congress on citizens of the United States, and asserts the broad right to do so because it has been endowed with the power to tax, and the power to tax is the power to destroy. The latter proposition may be true in fact as well as in theory, but it cannot be carried to the extent of destroying rights conferred by the constitution or laws of the United States. The claim of the territory is based, in a measure

at least, on the erroneous assumption that the fish in Alaskan waters are the property of the inhabitants of the territory, under the unlimited control of the territorial Legislature. But no such right in the inhabitants of the territory, or in the territory itself, has ever been recognized by Congress. On the contrary, in the act to which we have referred, Congress has declared its purpose to be to protect and conserve the fisheries of the United States in all waters of Alaska, and has delegated to the Secretary of Commerce full and complete authority to regulate the times and places when and where fish may be taken, the mode and extent of the taking, and almost every detail of the fishing industry, leaving little or nothing to the territory beyond the power to impose taxes and licenses. And this latter power cannot be so exercised as to defeat the general purpose of Congress, or destroy rights conferred by Congress upon citizens of the United States. We are of opinion, therefore, that there is a plain and irreconcilable conflict between the act of Congress and the act of the territorial Legislature, and in such cases the latter must yield.

The decree of the court below is reversed, with instructions to overrule the demurrer, and for further proceedings not inconsistent with this opinion.