## ANDERSON v. SMITH.

### No. 7391.

Circuit Court of Appeals, Ninth Circuit.

June 4, 1934.

H. L. Faulkner, of Juneau, Alaska, and Pillsbury, Madison & Sutro, and F. D. Madison, all of San Francisco, Cal. (Derby, Sharp, Quinby & Tweedt and Leland B. Groezinger, all of San Francisco, Cal., of counsel), for appellant.

Jas. S. Truitt, Atty. Gen., of Alaska, and E. E. Ritchie, of Seattle, Wash., for appellee.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

This suit was brought by a citizen of the United States, a resident of San Francisco, to enjoin Walstein G. Smith, as Treasurer of the Territory of Alaska, from collecting, or attempting to collect, from the plaintiff a license tax fixed by an Act of the Territorial Legislature approved April 20, 1933 (Laws 1933, c.

30). By this act license fees for each resident fisherman of all classes were fixed at $1 per annum, while for each nonresident fisherman who uses a hook and line in trolling, at $25; for each nonresident fisherman who uses gill nets, $25; for each nonresident fisherman who uses seines, $25; and for each nonresident fisherman employed in operation of fish traps, $25. Section 2. We are concerned here only with the license tax of $25 per annum for nonresident fishermen who use gill nets. To fish without the requisite license is declared to be unlawful, and the offense is punishable by fine and imprisonment. Section 7. The act does not apply to fishing for personal consumption, but only to fishing for commercial purposes. Section 8.

■■ Appellant contends that in view of the right of any citizen of the United States to fish in territorial waters of Alaska the Alaskan Legislature has no right to discriminate between citizens of the United States who are residents of Alaska and those who are not. States have no right to so discriminate in fixing license fees for the transaction of business within their borders. Chalker v. Birmingham, etc., R. Co., 249 U. S. 522, 39 S. Ct. 366, 63 L. Ed. 748; Ward v. Maryland, 12 Wall. 418, 20 L. Ed. 449. But it is equally well settled that states have a right to exact a higher license fee from nonresidents than from residents for the privilege of hunting game within its borders. This right to discriminate is based upon the principle that the state owns the wild fish and game within its borders and therefore has a right to determine the conditions upon which persons may reduce the same to possession and ownership. Geer v. Connecticut, 161 U. S. 519, 521, 16 S. Ct. 600, 40 L. Ed. 793. In Alaska, however, the wild fish and game belong to the United States, except in so far as they have been given to the Territory of Alaska. In granting legislative power to the territorial Legislature (section 4, Organic Act, approved August 24, 1912, 37 Stat. 513 [48 USCA §§ 67–72]). Congress expressly excepted therefrom the subject of game fish and fur seals by section 3 of the Organic Act, 37 Stat. 512 (48 USCA § 24), which provides as follows: "Provided, That the authority herein granted to the legislature to alter, amend, modify, and repeal laws in force in Alaska shall not extend to * * * the game, fish, and fur-seal laws and laws relating to fur-bearing animals of the United States applicable to Alaska, or to the laws of the United States providing for taxes on business and trade: * * * Provided further, That this provision shall not operate to prevent the legisla-

ture from imposing other and additional taxes or licenses."

It thus appears from the Organic Act that although the general legislative power granted to the territorial Legislature did not include the power to modify laws of the United States concerning fish this limitation is expressly modified by the further proviso that the restriction upon the territorial Legislature "shall not operate to prevent the legislature from imposing other and additional taxes or licenses."

In Haavik v. Alaska Packers' Ass'n, 263 U. S. 510, 44 S. Ct. 177, 68 L. Ed. 414, the Supreme Court held that the Legislature of Alaska had power under this Organic Act to impose a $5 tax on every nonresident fisherman, while no license tax was required from a resident fisherman. Chapter 31, Session Laws of 1921. The court said: "Plainly, we think, the territorial Legislature had authority under the terms of the Organic Act to impose both the head and license tax, unless, for want of power, Congress itself could not have laid them by direct action."

The court in that case concluded that Congress had the power which it had delegated to the territorial Legislature, stating in that regard: "It applies only to nonresident fishermen; citizens of every state are treated alike. Only residents of the territory are preferred. This is not wholly arbitrary or unreasonable, and we find nothing in the Constitution which prohibits Congress from favoring those who have acquired a local residence and upon whose efforts the future development of the territory must largely depend."

It is clear then that by section 3 of the Organic Act Congress authorized the territorial Legislature to determine what additional license fees should be paid for the privilege of fishing within the territorial waters of Alaska, and to discriminate between residents and nonresidents in that regard, although the determination of a license fee and the conditions, places, and times of fishing were reserved to Congress. On June 6, 1924 (chapter 272, 43 Stat. 464 [48 USCA § 221 et seq.]) Congress exercised the power which it had reserved in the Organic Act to regulate the Alaskan fisheries. After authorizing the secretary of Commerce to set apart certain fishing areas in Alaskan waters and to establish closed seasons therein and fix the size and character of nets, etc. (43 Stat. 464, § 1 [48 USCA § 222]), it was made unlawful to fish during the time when or at a place where fishing was prohibited by the Secretary of Commerce. The authority of the Secretary

of Commerce was limited by the proviso that: "No exclusive or several right of fishery shall be granted therein, nor shall any citizen of the United States be denied the right to take, prepare, cure, or preserve fish or shellfish in any area of the waters of Alaska where fishing is permitted by the Secretary of Commerce."

It was in view of this provision of the Act of Congress that we held in Freeman v. Smith, 44 F.(2d) 703, Id., 62 F.(2d) 291, that the territorial act fixing an exorbitant license fee was in legal effect a prohibition of the right of a citizen to fish in accordance with the rules and regulations laid down by the Secretary of Commerce in the territory of Alaska. This Act of June 6, 1924, however, expressly provided further that "nothing in sections 221 to 228 of this title contained, nor any powers conferred by said sections upon the Secretary of Commerce, shall abrogate or curtail the powers granted. the Territorial Legislature of Alaska to impose taxes or licenses, nor *limit or curtail any powers granted the Territorial Legislature of Alaska by sections 23, 24, 44, 45, and 67 to 90 of this title.*" 43 Stat. 467, § 8 (48 USCA § 228). (Italics ours.)

In view of this reservation of the powers of the territorial Legislature to fix license taxes in the act granting to citizens of the United States the right to fish in the waters of Alaska (48 USCA § 222), it. is clear that if the Legislature had a right before the enactment of this legislation to discriminate between residents and nonresidents in fixing the amount of the tax as the Supreme Court held that they did have (Haavik v. Alaska Packers' Ass'n, supra), they still had power to do so after the passage of the act. It was upon this basis that the officers of the Territory sought to sustain the legislation (section 2, c. 96, Laws Alaska 1929) fixing a license fee of $250 per annum for nonresident fishermen in the case of Freeman v. Smith, supra. We held, however, that the practical effect of the tax was prohibitory and thus beyond the power of the Legislature.

In the second decision in Freeman v. Smith (C. C. A.) 62 F.(2d) 291, 293, supra, we stated that the decision of the Supreme Court in Haavik v. Alaska Packers' Ass'n, 263 U. S. 510, 44 S. Ct. 177, 68 L. Ed. 414, rendered before the Act of June 6, 1924, supra, was "not decisive of the right of the territorial Legislature [under the latter act] to so discriminate between citizens of the United States who are residents and those who are nonresidents of Alaska where both have been granted a right by act of Congress." But, as we have seen, the right to fish granted by Congress by the Act of June 6, 1924, § 1 (48 USCA § 222), was expressly made subject to the existing right of the territorial Legislature to impose license fees, and (in view of the decision of the Supreme Court theretofore rendered in Haavik v. Alaska Packers' Ass'n, supra), to impose fees which discriminate between residents and nonresidents. 43 Stat. 467, § 8 (48 USCA § 228).

█ The question involved here, then, is not the power of the Legislature to discriminate between residents and nonresidents, but the question is whether or not the license fee imposed by the territorial Legislature is an unreasonable interference with a right granted by Congress, and, therefore, impliedly prohibited by Congress. It is clear then that so long as the license tax imposed by the territorial Legislature upon the citizens of the United States who are not residents of Alaska is not so exorbitant as to practically prohibit, or so unreasonable as to interfere with, the exercise of the right granted by Congress, it is within the power of the territorial Legislature. We cannot say that the license fee imposed by territorial Legislature in 1933 and now under attack is so unreasonable as to conflict with the act of Congress granting the right to fish (48 USCA § 222).

█ The appellant also relies upon that provision of the Organic Act, section 9, which prohibits a discrimination by the territorial Legislature between residents and nonresidents in the taxation of property. 37 Stat. 514 (48 USCA § 77). This act, in limiting the power of the Legislature, provides: "Nor shall the lands or other property of nonresidents be taxed higher than the lands of residents." It is argued that the right to take fish from the territorial waters granted by Congress (48 USCA § 222) is a property right, and therefore the Legislature of Alaska in providing for a larger license fee from a nonresident than from a resident has violated the Organic Act which prohibits such discrimination. It is true that for certain purposes the right to fish has been held to be a property right. The same question was raised before the Supreme Court in Haavik v. Alaska Packers' Ass'n, supra, as appears from the argument as contained in the report (263 U. S. 510, 511, 44 S. Ct. 177, 68 L. Ed. 414), where it was argued that: "The law taxing non-resident fishermen violated section 9 of the Organic Act of Alaska, providing: 'nor shall the lands or other property of non-residents be taxed higher than the land or other

property of residents.' Appellant had property in the right to go to Alaska and fish."

This point was disposed of by the statement of the Supreme Court that "None of the points relied upon by appellant is well taken.   *   *   *  "

In view of the foregoing considerations which require an affirmance of the judgment, it is unnecessary to consider the question of whether or not a court of equity has power under the circumstances to issue an injunction to prohibit the collection of an illegal license tax. That question has been recently before the Supreme Court in Miller v. Standard Nut Margarine Co., 284 U. S. 498, 52 S. Ct. 260, 76 L. Ed. 422, Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447, Lee, as Comptroller v. Bickell, 54 S. Ct. 727, 78 L. Ed. 1337, decided May 21, 1934, by United States Supreme Court, and it has been involved in many other recent cases before the courts. We refer to it merely for the purpose of indicating that we have not passed upon that question.

Decree affirmed.