**SELTENREICH et al.**

v.

**TOWN OF FAIRBANKS et al.**

No. 13357.

United States Court of Appeals
Ninth Circuit.

March 10, 1954.

Rehearing Denied April 30, 1954.

Robert A. Parish, George B. McNabb, Jr., Fairbanks, Alaska, for appellants.

William V. Boggess, City Atty., Fairbanks, Alaska, for appellee Town of Fairbanks.

Maurice T. Johnson, Fairbanks, Alaska, for Fairbanks School Dist., intervenor-appellee.

Before DENMAN, Chief Judge, and HEALY and POPE, Circuit Judges.

HEALY, Circuit Judge.

This is an appeal from an order of the District Court of Alaska, 103 F.Supp. 319, denying appellants' motion for an interlocutory injunction enjoining the Town of Fairbanks from closing Weeks Field, an airport owned and formerly operated by the Town. The motion is subsidiary to a plenary suit seeking permanent injunctive relief.

Appellants are severally engaged in aircraft service, or in the operation of a

training school for pilots, and prior to its closing were using the field in these enterprises. They, or some of them, appear to own adjacent property, and one of them claims to be the owner of a right of way over lots giving access to the field.

It appears from the showings for and against the motion that beginning with the year 1922 the Town acquired by purchase or otherwise various tracts of the land which serve to make up Weeks Field. Several parcels were acquired by deed from the Territory or from private owners, which deeds apparently contained no restrictions. The bulk of the area was transferred to the Town by the United States, or rather by the Townsite Trustee, its agent. These latter transfers directed that the tracts be held by the Town in trust "for park and recreational purposes," and provided for reversion should they be otherwise used. Subsequently it appears to have been determined that the Townsite Trustee was without authority to impose restrictions of this character; and in order to dispense with them the Town deeded the tracts to the United States which in turn conveyed them back to the Townsite Trustee with instructions to grant the same "omitting the reversionary clause." Accordingly in 1950 the Town obtained the lands unconditionally.

In 1950 the corporate limits of Fairbanks were extended to embrace Weeks Field. About this time an extensive airport, constructed by the Federal government some two miles from the Town, was completed and became available for general public use. It appears that the Civil Aeronautics Administration transferred its functions to the latter field, ceasing supervision over the Weeks airport runway and discontinuing its operation of the control tower there. The Fairbanks School District, an organization independent of the Town, acquired from the latter a parcel of land on the municipal airport and proceeded to build a school

there, accommodating ultimately 750 pupils. The school building itself is said to extend into the airport runway. These several developments and other considerations induced a determination on the part of the city council of Fairbanks to close Weeks Field and abandon its use as an airport.

Appellants' counsel frame the question for our decision in this fashion: "May a municipal corporation lawfully abandon a public airport?" In their effort to negative that proposition they have supplied us with a brief of a hundred forty pages citing more than three hundred cases, none of which is materially helpful so far as concerns the specific situation before us. We need not stop to inquire whether appellants have standing to sue; for present purposes, disregarding the Town's argument to the contrary, we assume that they have. Nor is it necessary to explore the broad field of abstract opinion into which counsel's labors have carried them.[1] A sufficient answer to the question as to the validity of the measures the Town of Fairbanks has taken in the specific situation confronting it may, we think, be arrived at in fairly brief compass.

The powers in general of city councils of municipalities in the class of Fairbanks are set out in the Alaska Compiled Laws, Annotated, 1949, Title 16, Article 1, § 35. Subdivision Twentieth of that section authorizes those bodies "[t]o acquire by purchase or otherwise, and to hold real estate and other property, * * * and to sell, lease or otherwise dispose of such real estate and other property, * * * including property acquired or held for any public use or devoted thereto, *when in the judgment of the city council the same shall no longer be required for municipal purposes;* * * * ."[2] [Emphasis supplied.] By legislative amendment approved March 22, 1951 it was provided that no

---

1. The briefs—more especially that of the appellants—discuss the point whether the Town holds the airport in its proprietary or in its governmental capacity, appellants adhering to the latter theory.

The question is interesting, but in the circumstances of this case we regard it as purely academic.

2. The power to acquire, maintain and operate airports was specifically delegated

sale, lease or other disposition of real property valued at more than $5,000 shall be valid unless ratified by a majority of the qualified electors of the municipality voting at an election held for that purpose. Ch. 61 SLA 1951. However, we are not necessarily concerned here with problems relating to the sale or other disposition of municipal property, but rather with the authority of the city council to determine whether and when property acquired or held by a municipality for any public use or devoted thereto ceases to be needed for such use. That such power of judgment is intended to be vested in the city council seems implicit in the statutory language above italicized. No ratification by the voters is required by the statute to confirm that judgment; nor would it appear to be essential that the exercise of the council's judgment in this respect be coincidental with the sale or other disposal of the property.[3]

The Municipal Airport Act, § 2(7) (a), referred to in footnote 2, supra, authorizes municipalities to adopt "such reasonable ordinances, resolutions, rules, regulations and orders as it shall deem necessary for the management, government, and use of" airport facilities under its control "whether situated within or without the town limits of the municipality. For the enforcement thereof, the municipality may, by ordinance or resolution, * * * fix penalties, within the limits prescribed by law, for the violation of municipal ordinances. * * *"

In September 1951 the city council of Fairbanks adopted a resolution ordering that "the said municipal airport commonly known as 'Weeks Field' be, and the same is hereby, closed for use as an airport and the use of the same on and after the 15th day of October, 1951, ei-

ther for the landing or the taking off of airplanes is hereby prohibited." The resolution recited at length the circumstances impelling the council to take this action. Among the reasons stated were the inability financially of the Town to continue the maintenance of the airport or to employ proper persons to manage and control the same; the availability of the much larger, better constructed and safer airport made available by the Government within two miles of the City; the fact that the governmental airport is under the control of the Civil Aeronautics Administration and is ample to serve all the needs of the Town of Fairbanks and the general public for a public airport; that Weeks Field was presently being used only by a small number of one-engine airplanes; that a new school building had been constructed in close proximity to Weeks Field runway with the result that the continued use of the field endangered not only the lives of those using the airport but the lives of the children attending the school and of other people living in the vicinity; and that the further continuance of the airport was no longer necessary for the general welfare or of benefit to the general public and was unfit for the landing of aircraft.

This resolution was followed a few days later by the adoption by the council of an ordinance prohibiting the use of the land owned by the City, commonly known as Weeks Field, for airport purposes and prohibiting the landing and taking off of aircraft therefrom. Violation of the ordinance was declared a misdemeanor punishable by fine or by imprisonment for not to exceed 30 days. Shortly afterwards, and prior to the closing date specified in the resolution, appellants moved the court for the inter-

in subdivision Fifth (B) of the same Section. However, this provision was superseded by the Alaska Municipal Airport Act of Feb. 24, 1949. Ch. 14, SLA 1949. This Act authorizes the disposal by municipalities of airports and facilities "in accordance with the laws of this Territory governing the disposition of other property of the municipality." § 2 (5).

3. It is significant in this connection to compare the provisions of 1 Alaska Compiled Laws Annotated, 1949, p. 253, relating to the vacation of streets and alleyways. These provisions authorize the common councils of incorporated towns to vacate by ordinance streets and alleys when required by public interest and convenience. But the statute requires ratification of the vacating ordinance by the qualified voters of the Town.

locutory injunction the denial of which is the subject of this appeal.

Appellants argue with many references to decided cases that an airport is not a nuisance per se, but at most is a nuisance in fact; and that the problem as to whether it is the latter poses a judicial question, hence one beyond the competence of the city council. Doubtless an airport operated under normal conditions and with adequate supervision and controls is not classifiable as per se a nuisance, but it is clear that Weeks Field had ceased to belong in that category. Under the conditions described its continued use for the landing and taking off of planes posed an obvious hazard to life and limb which the council was not warranted in ignoring. The prohibition and penalizing of such operations was an appropriate exercise of the police power of the municipality. Moreover, it must be remembered that the land was the property of the Town, not of appellants. The council, acting under authority of law and in the exercise of its considered judgment, had determined that the use of the property as an airport was no longer in the public interest, and had closed it to aviation. Those facts in themselves would seem to be decisive of the case.

Affirmed.