John C. MILLER and Levarg Gravel Co.,
a corporation, Petitioners,

v.

George E. ATKINSON, Jr., Respondent.

No. 157.

Supreme Court of Alaska.

Oct. 11, 1961.

W. C. Arnold, Anchorage, for petitioners.

Neil S. Mackay, Anchorage, for respondent.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

PER CURIAM.

In this petition we are asked to review a July, 1961 order of the Superior Court, Third Judicial District, temporarily restraining the petitioners from removing in-place gravel from a certain gravel pit. The basic question presented is whether any legal grounds existed for the issuance of the restraining order.

The petitioner Miller operates the gravel pit in question on state owned land under a contract with the state to purchase some 500,000 cubic yards of pit-run sand and gravel. Title to the materials passes to him only upon severance from the pit and payment therefor at the agreed price of 25 cents per cubic yard. The contract is for a period of ten years from September 5, 1956. Evidence presented by the petitioner indicated that as of July 15, 1961 he had extracted 262,515 cubic yards of gravel from the pit, 80,702 cubic yards of which were taken out between July 1, 1960 and July 15, 1961.

From the record we gather that the respondent Atkinson from time to time extended services and equipment to Miller and arranged for loans of money to Miller to meet payrolls and other obligations. On May 11, 1960, Atkinson loaned Miller $15,000 to pay off a tax claim of the Internal Revenue Service. On the same day Miller gave Atkinson a promissory note for the amount of the loan plus $1,500, payable within seventy days. The note provided that in the event of default in payment Atkinson should have the right to remove 100,000 cubic yards of in-place gravel from the pit.

It appears that a $32,000 or $33,000 payment was made on August 22, 1960 to Atkinson by Miller on some of his indebtedness. Miller claims that $16,500 of the amount paid was in discharge of the note, but this Atkinson denies. The note was never surrendered.

On July 10, 1961 Atkinson moved in on the gravel pit and prevented Miller from entering. He also took about 1300 cubic yards of stockpile gravel from the premises. Thereupon Miller brought this action against Atkinson, and in his complaint asked for a temporary restraining order, a preliminary injunction and damages. The trial court granted the restraining order and fixed the time for hearing the motion for a preliminary injunction. Atkinson answered the complaint with a general denial and with a counterclaim and crossclaim for $100,000 each and demanded a jury trial.

Atkinson retaliated further by asking for and obtaining from the court a temporary restraining order on his own behalf. This order, as entered on July 31, 1961, restrained the petitioners "from in any manner using or withdrawing earth, removing gravel, or going on for any purpose whatsoever the following described real property," which included the gravel pit.[1] By affidavit in support of his motion for a temporary restraining order Atkinson alleged that the promissory note of May 11, 1960 had not been paid according to its terms; that the 100,000 cubic yards of gravel which he is permitted to take by the terms of the note because of the default in payment "will be exhausted in the very near future"; that the petitioners are withdrawing gravel from the pit "equivalent of $2,000 per day"; and that his loss and damage is immediate and irreparable for the reason that the gravel pit is Miller's sole unencumbered asset. Also on July 31, the court concluded the hearing on Miller's motion for a preliminary injunction and made permanent the restraining orders of both parties until the further order of the court, indicating that it was best for the property to remain in status quo until the entire matter could be heard.[2]

1. This order was modified at a later date by limiting the restraint to the withdrawal, removal, or excavation of gravel in place from the pit.

2. Atkinson resorted to several other tactics, besides the restraining order, to tie up the gravel pit. He first filed a lis pendens, then moved for a receiver-

Respondent Atkinson in his brief speaks of the temporary restraining orders as having been converted into preliminary injunctions when the court made them "permanent" on July 31, 1961. We do not so consider them, for as late as August 9, 1961, when the order against Miller was further modified by allowing him to go upon the premises to use his office and equipment, the court still referred to the order as a restraining order. Furthermore, to make the orders into preliminary injunctions the court would have had to set forth the findings of fact and conclusions of law in support of its action, as required by Rule 52(a) [3] of the Rules of Civil Procedure. But this the court did not do.

Review is granted for the reason that postponement of such review until appeal may be taken from a final judgment in this case will result in injustice because of impairment of petitioners' legal right to take gravel from the pit as against the restraining order now pending against them, and for the further reason that the lower court has so far departed from the usual course of judicial proceedings as to call for this court's power of supervision and review.[4]

Injunctive relief as a provisional remedy is authorized by statute in this state to enjoin acts of the defendant which will cause irreparable injury to the personal or property rights of the plaintiff.[5]

The issuance of the restraining order against the petitioners in this case was an exercise by the lower court of its injunctive power. While the power to grant the order rested in the discretion of the court, to call into action this extraordinary power required a clear showing of the irreparable injury for which there was no other adequate remedy.[6] We find no such showing in the record before us. Quite to the contrary, respondent demonstrates by his own actions that he has an adequate remedy at law. In this action he has cross-claimed and counterclaimed for a money judgment, demanded a jury trial and sought a writ of attachment against the gravel pit. He made an abortive attempt to get a receiver appointed for the gravel pit; and he has also brought another independent action at law and has sued out a writ of attachment therein against the same gravel pit.

Nor can we find in the record any evidence of irreparable damage to the respondent through depletion of the gravel pit. It is estimated, and not shown by the respondent to be otherwise, that the pit contained about 500,000 cubic yards of gravel, and that of this total, 262,515 cubic yards had been extracted, leaving a balance of amout 237,000 cubic yards. In his argument before the court, respondent's attorney admitted that the only way to determine the amount of gravel remaining in the pit is to have an engineering firm run a cross

ship, and in a separate action attached the gravel pit.

3. The pertinent provision of Rule 52(a) of the Rules of Civil Procedure states:
   "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. * *"

4. Alaska Sup.Ct.R. 23(e) and 24(3).

5. Sections 55–6–51 through 55–6–54 A.C.L.A.1949.

6. Snyder v. Kelter, D.C.D.Alaska 1912, 4 Alaska 447, 455; Anderson v. Smith, D.C. D.Alaska 1934, 8 Alaska 470, 476–477 affirmed 9 Cir., 1934, 71 F.2d 493, 5 Alaska Fed. 733; Seltenreich v. Town of Fairbanks, D.C.D.Alaska 1952, 103 F.Supp. 319, 13 Alaska 582, 621, affirmed 9 Cir., 1954, 211 F.2d 83, 14 Alaska 568, certiorari denied, 1954, 348 U.S. 887, 75 S.Ct. 206, 99 L.Ed. 697; Almaden Vineyards Corporation v. Arnerich, 1937, 21 Cal. App.2d 701, 70 P.2d 243. See also Porto Rico Tel. Co. v. Puerto Rico Communications Authority, 1 Cir., 1951, 189 F.2d 39, certiorari denied, 1951, 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628.

section; but he did not come prepared to show the court that such a cross section had been taken and what it revealed. We conclude that there was no evidence to justify the issuance of the restraining order against the petitioners.

■ The respondent contends that the petitioners are here complaining to this court about something to which the petitioners agreed, namely, the issuance and making permanent the restraining order of July 31, 1961. The record does not support the respondent's contention. What actually happened is that counsel for respondent orally moved for the issuance of a temporary restraining order and the court denied it, stating that the motion and showing should be in writing. A written motion was accordingly submitted and filed and then during the oral showing by Miller's attorney in opposition to the granting of the motion, the court announced that it would sign the order and did sign it. Then, when it became apparent from what the court said that it was going to extend that order from time to time as necessary, Miller's attorney remarked:

"Well then, will it be extended at the end of ten days? The reason I say that I'm willing to have it made permanent—both orders made permanent until further order of the Court. It seems to me that that's the only way we can get at it."

To us these remarks by counsel merely indicate that he realized it would be useless to present argument at later extensions of the order because it was apparent that the court would grant extensions anyhow and, therefore, he consented to such future extension.[7] In our opinion such consent did not deprive the petitioners of their right to seek review of the propriety of the issuance of the restraining order in the first instance.

The restraining order of July 31, 1961 is vacated and the case remanded for further proceedings in accordance with this opinion.

7. Rule 65(b) of the Rules of Civil Procedure states that a temporary restraining order shall expire at the end of ten days, unless within that time, for good cause shown, it is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period.