**STATE of Alaska, Petitioner,**

v.

**James E. NORENE d/b/a Western States
Fireworks Co., and Joseph S. Bagwill
d/b/a Alaska Fireworks Co., Respondents.**

**No. 1167.**

Supreme Court of Alaska.

Aug. 15, 1969.

James D. Rhodes, Asst. Atty. Gen., Anchorage, for petitioner.

Edgar Paul Boyko, Anchorage, for respondents.

Before NESBETT, C. J., RABINOWITZ, BONEY, CONNOR, JJ., and MOODY, Superior Court Judge.

OPINION

BONEY, Justice.

On July 3, 1969, this matter came before the whole court on a motion by respondents to vacate a stay order entered on July 2, 1969, by Chief Justice Nesbett, sitting as a single justice. That stay order suspended the effect of an injunction which had been issued by the superior court on June 27, 1969. The stay order.of the Chief Justice was issued late in the afternoon of July 2, 1969. It was considered and entered *ex parte*, that is, without respondents having had an opportunity to be heard.

On the morning of July 3, 1969, respondents filed with the whole court their motion to vacate the stay. It then became incumbent on the whole court to act in the matter.

No court can make time stand still. The circumstances surrounding a controversy may change irrevocably during the pendency of an appeal, despite anything a court can do. But within these limits it is reasonable that an appellate court should be able to prevent irreparable injury to the parties or the public resulting from the premature enforcement of a determination which may later be found to have been wrong. It has always been held, therefore, that, as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.

Scripps-Howard Radio v. Federal Communications Comm'n, 316 U.S. 4, 9–10, 62 S.Ct. 875, 879, 86 L.Ed. 1229, 1234 (1942) (footnote omitted) (Frankfurter, J.). The motion of the respondents raised questions about the unconstitutional application of a statute to respondents' business, about whether the stay would inflict irreparable injury upon respondents if it were allowed

to remain in effect over the Fourth of July weekend, when a large portion of respondents' annual business is conducted, and about whether the stay of July 2, 1969, should have been entered as a matter of sound judicial discretion.

Because of the allegedly emergency nature of the motion and the danger of mooting respondents' rights by inaction, a majority of this court voted to convene on the evening of July 3, 1969, in order to hear oral argument by each party and so that a disposition of the stay aspect of the case could be achieved before the Fourth of July weekend.

As a result of oral argument, a majority of this court agreed upon the entry of a stay order on July 4, 1969, different in nature from the stay order entered by the Chief Justice on July 2, 1969. This court's stay order and the dissent to that order are attached as appendixes A and B, respectively.

On June 24, 1969, respondents filed suit in superior court by filing a verified complaint naming various state officials and Ace Fireworks Company as defendants.[1] The complaint was comprised of eleven pages of specific allegations which charged in brief that the State of Alaska had passed a law which was unconstitutionally discriminatory in its effect. The law complained of, AS 18.72.020(a) (1), in pertinent part reads as follows:

Regulation of sale of salable fireworks. (a) A person holding a permit required by the fire safety code may sell or offer for sale salable fireworks, if

(1) the person has submitted to the state fire marshal a policy, or a certified true copy of a policy, of public liability and products liability insurance, including both accident and occurrence coverage, provided by the wholesale

---

1. There were ten defendants named plus fifteen defendants identified as John Doe. It was represented to this court by counsel for respondents that suit was filed immediately after respondents learned of the discriminatory effect of the law in question. Since the law does not discriminate on its face, only after respondents learned that it was impossible to comply with the law did they have reason to complain.

company selling to the fireworks retailer, in the amount of at least $300,000 for bodily injury or death and at least $100,000 property damage, upon which policy the state and all governmental subdivisions of the state and the permit holder shall be named as additional insureds and which shall be continuously in force while the permit holder is engaged in the retail sale of fireworks, and * * *.

This statute required the respondents to obtain the following type of insurance: (1) public liability insurance including both accident and occurrence coverage in the amounts of $300,000 for bodily injury or death and $100,000 property damage; (2) products liability insurance including both accident and occurrence coverage in the amounts of $300,000 for bodily injury or death and $100,000, property damage. These insurance policies are required to contain the following additional provisions over and above a standard insurance policy: (1) the state and all governmental subdivisions of the state shall be named as additional insureds; (2) the permit holders shall be named as additional insureds (permit holders would mean retailers who sell fireworks purchased from or sold on behalf of respondents or other wholesalers). Although this statute appears to apply equally to all persons engaged in the sale of fireworks, the respondents claimed in their verified complaint that in effect only one fireworks wholesaler could obtain the required insurance and that all others were unable to comply with the law. There were many other specific allegations in the complaint concerning how the legislature came to enact such a statute; these allegations as to the legislative motive are irrelevant at this point. The only legally relevant allegation before us is respondents' claim that the legislature passed a law which put everyone out of business except

one wholesaler, and that no valid legislative end could possibly be achieved by such a law.[2] This allegation was further supported by the affidavits of James E. Norene, Von R. Baxter and Brad Phillips.

Relying on the allegations of the verified complaint and the affidavits, respondents obtained a hearing on June 25, 1969, before the superior court to determine if a preliminary injunction should be issued to halt the enforcement of the statute. In light of the impending July 4th holiday, respondents urged that very great economic harm would be suffered by them if the statute was enforced during the pendency of the suit, i. e., over the Fourth of July. At the hearing the state chose not to contradict the sworn allegations of respondents. No counter affidavits were introduced by the state. The state relied on establishing as a point of law that statutes which do not discriminate on their face should not be enjoined by the court.

On June 27, 1969, the superior court issued the preliminary injunction as requested by respondents in the hearing. The superior court's order enjoined the state from enforcing any provision of the statute relating to the insurance requirement. Thus by this injunction respondents were to be issued the necessary permits without having obtained any insurance at all. The order of injunction specifically provided that it could be dissolved upon a showing by the state that insurance was generally available to all fireworks dealers or that other of respondents' allegations were untrue. The superior court found that the uncontradicted allegations of respondents, if proven at trial, would necessitate a finding that the statute's insurance provisions were unconstitutional and unenforceable. The superior court further found that grave harm would result to respondents if

2. In Morey v. Doud, 354 U.S. 457, 77 S. Ct. 1344, 1 L.Ed.2d 1485 (1957), an Illinois statute placed severe restrictions on the business of selling money orders. These restrictions did not apply to the American Express Company, but did apply to all other private companies selling money orders. The Supreme Court struck down the law because the discriminatory regulation could not achieve any conceivable, valid legislative end.

the insurance portion of the statute were not enjoined pending the trial.

■ Five days after the entry of the preliminary injunction the state made an *ex parte* application to the Chief Justice of this court for an order staying the preliminary injunction.[3] The state did not make a further showing in the superior court as was allowed for in the injunction. Nor did the state comply with the spirit of Supreme Court Rule 33(b), which provides in pertinent part as follows:

> Applications for stay to this court or a justice thereof normally will not be entertained unless application has first been made to the superior court and has been denied.

While this rule does not require in all cases that applications for stay must be made to the superior court, the use of the word "normally" suggests that departure from the rule should be accompanied by some explanation for the failure to apply to the superior court.[4] In the present case the state offered no satisfactory explanation for why the *ex parte* application was made to a justice of this court without a prior application to the superior court. In fact the state's application for stay was so brief that it did not even include a copy of the preliminary injunction which was to be stayed. On this basis the Chief Justice issued the stay on July 2, 1969.

On July 3 respondents applied to this court for an order vacating the stay and thus reinstating the superior court's injunction. That evening this court held the hearing at which argument was heard from the state and respondents. Respondents during the hearing admitted that only part of the insurance requirements were the cause of the alleged discrimination. The respondents admitted that the requirement of public liability and property damage insurance in the specified amounts was not unreasonable and was not the cause of the discrimination. The thrust of respondents' claims at the hearing was that the requirement that the state and all its political subdivisions be named as additional insureds was the cause of the discrimination. Because of this provision, respondents claimed to be unable to comply with the law.

■ We, at this time, do not need to decide the constitutionality of the statute in question. It is not our function to decide the merits of the complaint upon an application for stay of a preliminary injunction pending a petition for review of that preliminary injunction. It is irrelevant whether we believe or disbelieve that the legislature was taken advantage of by lobbyists for Ace Fireworks. The only question before this court is whether the superior court's preliminary injunction was issued on a valid basis. We believe that the injunction was properly issued, although it was too broad in scope. Accordingly, by our stay order of July 4, 1969, we did, in ef-

---

3. The record indicates only that the application for stay was served on opposing counsel on the same day that it was granted. Sup.Ct.R. 33(a)(4) states that unless otherwise ordered the opposing party shall have 10 days to respond to an application for a stay. This rule and Sup.Ct.R. 44 do not contemplate that applications for stays can be heard before the court or a justice without allowing the opposing party any opportunity to respond to the application for stay. We do not find any order in the record shortening the time for response by respondents. Sup.Ct.R. 20(c) provides in part:
   > If application is made to this court or to a justice of this court for * * * any * * * relief which might have

   been granted by the superior court, the application shall be upon notice * * *.

   Of course, it is conceivable that there may arise situations where notice to the opposing party even in the form of a telephone call is impossible. In these rare cases the stay order should recite the justification for the departure from the rules.

4. Sup.Ct.R. 7(d)(2) and Sup.Ct.R. 33(a)(2) are to the same effect. Sup.Ct.R. 33(a)(2) provides:
   > The petition shall set forth with particularity why the relief sought is not available in any other court, or cannot be had through appellate processes of appeal or petition for review.

fect reinstate the injunction, but confined it to narrower terms.[5]

■ In order for us to reach the conclusion that the injunction was proper, besides finding the element of irreparable harm, we must decide whether respondents' allegations, if proved at trial, would entitle them to the relief sought. A statute, fair on its face, which is discriminatory in its application or its effect is just as repugnant to the provisions of the Constitution as a law which discriminates on its face. Gomillion v. Lightfoot, 364 U.S. 339, 347, 81 S.Ct. 125, 5 L.Ed.2d 110, 117 (1960); Lane v. Wilson, 307 U.S. 268, 275, 59 S.Ct. 872, 83 L.Ed 1281, 1287 (1939); Yick Wo v. Hopkins, 118 U.S. 356, 373, 6 S.Ct. 1064, 30 L.Ed. 220, 227 (1886). Economic regulations which in effect discriminate can be validated upon a showing of an adequate legislative purpose which necessitates the discrimination. In the present case the state made no showing at all as to what state interest would be served by any of the provisions of this statute, other than the claim that all laws are to protect the public. However, respondents admitted a valid state interest would be served by certain parts of the provisions. Therefore as to these parts the injunction will continue to be stayed.

However, the trial court could have found that the requirement that the State of Alaska and its political subdivisions be named as additional insureds on such insurance policies was unreasonable and constitutionally discriminatory. This particular provision might appear to afford protection to the State of Alaska and its political subdivisions as follows: (1) It could provide insurance coverage for the State of Alaska and its political subdivisions for their negligence in so far as it may relate to fireworks. If this were the purpose of this statutory provision, there might be no reasonable or conceivable purpose for the provision, because it might not be fair to require a business to buy insurance to protect the State of Alaska and political subdivisions from their own negligence. (2) Naming the State of Alaska and its political subdivisions as named insureds could conceivably give the State of Alaska a direct cause of action against the insurance carrier for damage to any of the property of the state and its subdivisions as a result of the negligence or strict liability which may be imposed upon the respondents. However, no legal advantage would be afforded to the State of Alaska by such a direct action against an insurance carrier. Under a standard insurance policy, the state or its subdivisions could sue the tortfeasors for any negligence or on a strict liability theory; and if a judgment were obtained, collection could be made so that judgment would come from the fund provided by the insurance policy held by the respondents. Therefore, the trial judge might have found that this particular provision had no reasonable basis and was unreasonably discriminatory against the respondents.

If, as claimed by respondents, insurance could not be procured by them because of the portion of the statute requiring that the state and its political subdivisions be named as additional insureds, the superior court might have regarded this as requiring that a preliminary injunction should issue.

[6] Again we note that to this date the State of Alaska has not shown how the state's interest would be protected if such a requirement were enforced against the respondents. Upon reviewing the whole record, we find that the trial judge's finding that respondents' allegations justified an injunction as to this portion of the in-

---

5. This court has the power to modify an injunction during the pendency of proceedings for review. Civ.R. 62(f) provides:

Power of Supreme Court Not Limited. The provisions in this rule do not limit any power of the supreme court or of a justice thereof to stay proceedings during the pendency of an appeal or proceedings for review, or to suspend, modify, restore or grant an injunction during the pendency of an appeal or proceedings for review, or to make any order appropriate to preserve the status quo or the effectiveness of the judgment subsequently to be entered.

surance requirement was not clearly erroneous. Therefore, in this respect, this court at this stage of the proceedings will not disturb the decision of the superior court.[6]

The respondents have made an adequate showing that they would suffer irreparable injury if the stay were not modified. We note that the provision of Civil Rule 65 cited by the dissent refers to the conditions under which a temporary restraining order may be issued without notice. It does not directly bear on the problem at hand: the issuance of a preliminary injunction after notice and a hearing.

This court has required, for the above reasons, that the insurance required by AS 18.72.020(a) (1) be posted by the respondents as a condition precedent to the stay being vacated, with the exception that such insurance policy need not be conditioned upon the state and its subdivisions being named as additional insureds.

It has always been the duty of courts to protect the property and liberty of the people from unconstitutional state action. In this case, the respondents were put out of business and thereby deprived of their property rights by an *ex parte* stay order granted by a single justice of this court without respondents having a hearing and without the justice having before him a record containing the findings, conclusions, and the injunction issued by the superior court. Regarding the importance of notice, Mr. Justice Frankfurter has stated:

> No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it. Nor has a better way been found for generating the feeling, so important to a popular government, that justice has been done.

Joint Anti-Fascist Refuge Comm. v. McGrath, 341 U.S. 123, 171–172, 71 S.Ct. 624,

95 L.Ed. 817, 854 (1951) (concurring). We would be remiss in the performance of our constitutional responsibilities if we did not intervene to take appropriate corrective action. Sometimes courts have not been as sensitive to the protection of property rights as they have been in the defense of personal liberty. Personal liberty means very little when one's property rights are invaded and vice versa. We are not unmindful of the public interest in regulating fireworks and in protecting the public from their attendant physical dangers. In the stay order of the court of July 4, 1969, the public interest is accommodated along with the claims asserted by the respondents that they were suffering harms in violation of their constitutional rights.

The original stay in this case was granted with the understanding that the State of Alaska would file a petition for review to this court under Supreme Court Rule 23. As of this date, the petition for review has not been filed. If such a petition is not filed as required by the rules of this court, then the stay entered by the whole court on July 4, 1969, will be of no force or effect, and the entire preliminary injunction issued by the superior court will be operable again.

DIAMOND, J., not participating.

### APPENDIX A

### ORDER

After hearing and considering the argument of counsel herein on Plaintiff's Motion to Vacate Stay;

It is the Order of the Court that the Stay remain in effect until sufficient proof is furnished to the State Fire Marshal that a policy of insurance has been obtained providing public liability and products liability including both accident and occurrence coverage in the amount of at least $300,000.00 for bodily injury or death

---

6. As stated in Sup.Ct.R. 33 stays on original applications are not a matter of right but of sound discretion sparingly exercised. This court in the past has interfered with interlocutory orders of the superior court only in cases where the order to be reviewed is of substance and importance, and where justice demands an immediate review of the order. Sup.Ct. R. 24.

and at least $100,000.00 property damage and which shall be continuously in force while the permit holder is engaged in the retail sale of fireworks. Such policy shall not be required to cover the state or any governmental subdivisions of the state as additional insureds, but shall cover as additional insureds, retailers who sell the products provided by plaintiffs, appellees.

## APPENDIX B

NESBETT, Chief Justice, disagreeing with the order in part:

I agree that the stay should remain in effect and that the plaintiffs be required to maintain insurance in the amounts required by statute. I disagree with the order to the extent that it exempts the plaintiffs from the statutory requirement that the insurance policies name the state and political subdivisions as beneficiaries.

This court has no authority to exempt a particular litigant from the requirements of a concededly reasonable statutory requirement and thereby discriminate against all other vendors of fireworks in the state who have complied with the requirement.

Plaintiffs' sweeping claims of fraud and conspiracy were not supported by any "specific facts" as is required by Civil Rule 65 before the extra-ordinary relief of a preliminary restraining order and temporary injunction may be granted. His claim that the members of the Alaska Legislature were misled and misguided in enacting the legislation is ridiculous and unsupported, as is his claim that Alaska's Commissioner of Public Safety, Fire Marshal, Department of Law and Director, Division of Insurance are acting as the unwitting tools of certain master conspirators in the background. The legislation complained of was enacted in April of 1969. Plaintiffs asked for no relief in court until June 23, 1969. They have only their own delay to blame for the fact that crucial court proceedings have occurred during the height of the fireworks season.

The lower court order was sustained on unspecific, unsupported allegations and innuendo, interwoven with a specious argument that an economic emergency of the state's making existed. No better evidence has been placed before this court. As long as any of our courts permit and give any credence to this type of practice, it will continue to be employed by some counsel for the simple reason that it often gains objectives not attainable by prescribed practice and procedure.

NESBETT, Chief Justice, disagreeing with the order in part.

I agree that the stay should remain in effect and that the plaintiffs be required to maintain insurance in the amounts required by statute. I disagree with the order to the extent that it exempts the plaintiffs from the statutory requirement that the insurance policies name the state and political subdivisions as beneficiaries.

This court has no authority to exempt a particular litigant from the requirements of a concededly reasonable statutory requirement and thereby discriminate against all other vendors of fireworks in the state who have complied with the requirement.

Plaintiffs' sweeping claims of fraud and conspiracy were not supported by any "specific facts" as is required by Civil Rule 65 before the extraordinary relief of a preliminary restraining order and temporary injunction may be granted. His claim that the members of the Alaska legislature were misled and misguided in enacting the legislation is ridiculous and unsupported, as is his claim that Alaska's Commissioner of Public Safety, Fire Marshal, Department of Law, and Director, Division of Insurance are acting as the unwitting tools of certain master conspirators in the background. The legislation complained of was enacted in April of 1969. Plaintiffs asked for no relief in court until June 23, 1969. They have only their own delay to blame for the fact that crucial court proceedings have occurred during the height of the fireworks season.

The lower court order was obtained on unspecific, unsupported allegations and in-

nuendo, interwoven with a specious argument that an economic emergency of the state's making existed. No better evidence has been placed before this court. As long as any of our courts permit and give any credence to this type of practice, it will continue to be employed by some counsel for the simple reason that it often gains objectives not attainable by prescribed practice and procedure.

NESBETT, Chief Justice, supplementing the foregoing dissent.

MOODY, Judge, joining in the dissent.

The majority opinion criticizes the issuance of a stay order by a single justice of this court without first conducting a hearing. The purpose of Supreme Court Rule 33(b) [1] is that a single justice can and should, when appropriate, issue stay orders without a hearing. Justices of this court have frequently exercised this power to preserve a status quo for the time being. In this case the power was exercised in order to immediately restore to full force and effect a validly enacted statute of the state regulating the sale of fireworks. The effect of the statute had been destroyed by the injunction issued by the trial court on what appeared to be an insufficient showing. If notice and hearing had been resorted to no action could have been taken until after the Fourth of July holidays, after which time most of the questions would have become moot. The same type emergency procedure and power is provided for in Civil Rule 65 [2] covering the issuance of injunctions. It was under this

emergency power that the trial judge first granted the plaintiffs a temporary restraining order against enforcement of the statute without notice to the state or the other defendants and without hearing.

The temporary restraining order and the temporary injunction were issued on the same record. Insofar as is pertinent both orders prevented the state from enforcing the insurance provisions of its fireworks statute; from requiring the obtaining of the sales permit provided for in the statute and from interfering with plaintiffs' conduct of their business in any manner under color of the insurance requirements of the statute. The temporary injunction contained the additional provision that it was issued without prejudice to the rights of the state officials [3] to apply for dissolution of the injunction upon showing:

(1) That plaintiffs could in fact obtain insurance on the same terms as "it is now available to defendant Ace Fireworks Company"

or,

(2) That the allegations of the verified complaint and supporting affidavits with respect to the monopolistic and discriminatory effect of the statute were not true. [4]

Before the preliminary restraining order and the temporary injunction could be justifiably granted the plaintiffs herein must have satisfied the requirements of Civil Rule 65 which governs the granting of injunctions. That rule in pertinent part states:

No temporary restraining order shall be granted without notice to the adverse

1. Supreme Ct. R. 33(b) states:
   Proceedings in the superior court or the enforcement of any order or decision thereof shall not be stayed by the filing of a petition for review or of an original application for relief unless the superior court or this court or a justice thereof shall so order. Applications for stay to this court or a justice thereof normally will not be entertained unless application has first been made to the superior court and has been denied.

2. Quoted in part, *infra* page 933.

3. The Fire Marshal, Assistant Fire Marshal, Director, Division of Insurance, and Attorney General.

4. These two conditions are unprecedented in that, as a condition precedent to restoring to the state the right to enforce its validity enacted statute, it must prove to the court that the plaintiffs could obtain insurance on the same terms as it was available to Ace and disprove all of the broad allegations concerning monopoly and discrimination, which had not been established prima facie by facts and circumstances in plaintiffs' application.

party unless it *clearly appears* from *specific facts* shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before notice can be served and a hearing had thereon. Every temporary restraining order granted without notice * * * shall define the injury and state why it is irreparable and why the order was granted without notice.[5] (Emphasis supplied).

The requirement of this rule is that it must "clearly appear" from "specific facts" shown by affidavit or verified complaint that irreparable injury will result, etc. Broad allegations or conclusions are not sufficient. Because of this requirement none of the broad allegations and unsupported conclusions contained in plaintiffs' verified complaint were sufficient to support its request for a preliminary restraining order or temporary injunction. While, as the state aptly pointed out, plaintiffs' complaint might have been sufficient as a pleading, where the assumption would be that the various allegations would be supported at the trial by specific evidence, it was definitely not sufficient to support the requirement that "specific facts" be presented to the trial court before such extraordinary relief as a preliminary restraining order or temporary injunction could issue. This requirement was aptly stated by a California court in City and County of San Francisco v. Market Street Railway Co., 95 Cal.App.2d 648, 213 P.2d 780, 785 where it said:

Where the complaint is the sole basis of the order, and the complaint is treated as an affidavit, its sufficiency must be tested by the same rules applicable to oral testimony. Conclusions that might stand

as a matter of pleading are not competent to justify the issuance of an injunction.

None of the broad allegations contained in plaintiffs' complaint advised the court any further than that the plaintiffs charged a conspiracy which created a monopoly and that the defendants were the conspirators. As the California court said in City and County of San Francisco v. Market Street Railway Co., *supra:*

Unless the statement in the nature of a conclusion is supported by the facts or circumstances on which it rests, it is insufficient to sustain an application for injunction.

The matter presented in support of the claimed conspiracy and the resulting monopoly was:

The plaintiff Norene's bare statement that in 1968 Ace entered the Alaska market for the first time and attempted to obtain some of their fireworks business; that when plaintiff's customers remained loyal to plaintiff, then Ace and its "co-conspirators" Ace, Empire, and Tobey "and others to plaintiffs presently unknown, resorted to the insurance legislation scheme * * * and, by means of fraudulent misrepresentations made to key legislators, during the frantic closing hours of the 1969 session of the Alaska Legislature," caused the fireworks legislation to be enacted; that in doing so it was fraudulently represented to the legislators that the legislation was sponsored and desired by Alaskan suppliers and that the insurance requirements were reasonable and easily complied with; that actually plaintiffs "were never properly consulted" by the legislature and did not know of the pending legislation until after it was

5. The showing which must be made in support of the issuance of a temporary injunction is identical to that which must be made in support of a temporary restraining order. The applicant has the burden of showing his right to injunctive relief by evidence and that irreparable injury will result if the injunction is not granted and the trial court must make findings of "fact" based on the "evidence" presented in support of the application. The only difference is that the temporary restraining order is granted without notice or hearing. *See* 7 J. Moore, Federal Practice ¶ 65.04[1] at 1629–1630 (2d. ed. 1968) and cases cited in Footnotes 14 and 16.

passed;[6] that the legislation was prepared by the conspirators for the express purpose of working the "insurance-legislation monopoly gimmick" used heretofore in other areas so that the defendants could engage "under the color of state law, in unlawful monopolistic practices and to defraud the Alaskan public;" that "as a direct result of the misrepresentations and unlawful acts and conspiracy referred to above, certain responsible officials of the state of Alaska were induced and misled to adopt, without proper or reasonable cause, in a manner not consistent with law, and based upon an invalid enactment of the legislature," certain emergency regulations which, "together with the legislation herein complained of, deny to plaintiffs * * * the right to engage in their usual, normal and lawful business, without first complying with unreasonable, discriminatory and impossible insurance requirements;" that plaintiffs attempted to obtain the insurance on the general market unsuccessfully because no "responsible and ethical" insurance company would provide the coverage, because of the "unreasonable and deceptive" wording of the statute; that the defendants Empire and Tobey "did refuse to issue such policies to plaintiffs and will insure, exclusively, only their co-conspirators, defendants Ace and/or Ace Novelty, *for economic reasons of their own*" (emphasis supplied); that as a result the named state officials (The Commissioner of Public Safety, The Fire Marshal, and Assistant Fire Marshal) have been induced to issue " * * * unwittingly and in good faith, but nevertheless contrary to law and against public policy, certain exclusive and monopolistic fireworks permits" to defendants; that the insurance requirements of the state "are unreasonable, impossible of performance, discriminatory, confiscatory and in excess of the police power of the State of Alaska, for the reasons stated;" that the statute is "contrary to public policy and in violation of the antitrust laws of the United States, by creating an unlawful monopoly, encouraging unfair competition and encouraging the practice of fraud and deceit upon the public of the State of Alaska" and accordingly the statute is "null and void and without any force and effect." The affidavit of Von Baxter, managing officer of J. C. Morris Agency was submitted which stated that none of the standard markets of his company nor Lloyd's of London would provide insurance of the type required because of the broad scope of coverage and uncertainty of risk. The affidavit of Joseph Bagwill was submitted stating that unless the court issued a restraining order "without taking time out for notice and hearing thereon" that plaintiffs would be irreparably damaged because "prevented from making the necessary preparation for the sale of fireworks for the Fourth of July celebration" and that he had been advised by counsel that the fireworks statute was unconstitutional and denied him the equal protection of the laws.

The essence of a conspiracy is an agreement together with an overt act. The complaint alleges that the defendants conspired to work the "insurance-legislation monopoly gimmick." Not one specific fact or circumstance was stated to show that the defendants acted in concert or pursuant to agreement. No specific statement of fact supported the broad allegation that the defendants actually prepared the legislation; nothing in the entire record supports the claim that the defendants' purported actions were based on "misrepresentations and unlawful acts" and the "conspiracy referred to above." The broad allegations would infer that some details of the "conspiracy," the "misrepresentations," the "insurance-legislation monopoly gimmick" were known to the plaintiffs. If so, enough of the details in the form of "specific facts" should have been stated so as to make out a prima facie showing of conspiracy and monopoly. Names, dates, places, and other particular facts are entirely missing from plaintiffs' showing with respect to all of the broad al-

---

6. At the hearing counsel for plaintiffs admitted that the plaintiff Norene "received a copy of the bill, gave it to his attorney who checked in Juneau and was told the bill had no chance of passage and promptly forgot about it."

legations contained in the complaint and in the affidavits. Nothing factual supports the bare statement that Ace and Empire and Tobey conspired and that Empire refused to insure plaintiff. Facts and circumstances sufficient to state a prima facie case were totally absent. In fact, it would appear from plaintiffs' own "showing" that Empire's reason for refusing to insure plaintiff was "for economic reasons of their own" and not because of a conspiracy to create a monopoly.

The affidavit of Baxter contained the only specific facts before the court: that he had been unsuccessful in procuring the required insurance from the standard markets of his firm or from Lloyd's, but no dates or firm names were mentioned. This affidavit by no means constituted a prima facie showing that the insurance was not procurable on the market as a whole. The broad inference of Baxter's affidavit was refuted by the affidavit of Senator Phillips that the insurance was available, but "only at prohibitive rates."

The affidavit of the President of the Senate that the legislation was hasty and ill advised is only the opinion of 1 of 60 legislators involved in its passage, is not supported by any facts and fails utterly to connect the defendants or any specific person with the alleged conspiracy to mislead the legislators and create a monopoly.

In spite of the absence of any specific showing the trial court found that the plaintiffs had tried to obtain insurance, but were unable to because it was not available except through Empire which would not sell it to plaintiffs or any person other than Ace "on the same terms and conditions." No facts whatever concerning a request and refusal or concerning any terms and conditions were contained in plaintiffs' complaint or in an affidavit.

The trial court found that the statute was unconstitutional because it was discriminatory and confiscatory. The showing was that it actually was not discriminatory but that it applied to all vendors of fireworks alike and that Ace had in fact procured insurance that satisfied the defendant state officials.

Regulations issued pursuant to the statute were also found to be discriminatory and confiscatory *although no regulation was introduced into or even quoted in the record.* The record contains no information of any nature concerning any of the regulations which were supposedly issued.

The only showing in support of the finding that the statute was prima facie unconstitutional appears to be plaintiffs' repeated allegations that it was "contrary to public policy," "unreasonable," "impossible of performance," "in excess of the police power," etc. Such allegations are not facts and circumstances and do not enlighten the court. They provide nothing for the defendants to meet in attempting to oppose the issuance of a restraining order or injunction.

Where the subject regulated, such as fireworks in the case before us, is properly within the scope of the police power of the state, a charge of discrimination, or lack of reasonable relation between the object of the act and the means employed, must be supported by facts in the record sufficient to overcome the general presumption of constitutionality of the act. See O'Gorman and Young, Inc. v. Hartford Fire Insurance Co. of Hartford, 282 U.S. 251, 257, 51 S.Ct. 130, 75 L.Ed. 324, 327 (1930).

> The basic principle which underlies the entire field of legal concepts pertaining to the validity of legislation is that by enactment of legislation a constitutional measure is presumed to be created. In every case where a question is raised as to the constitutionality of an act, the court employs this doctrine in scrutinizing the terms of the law. 16 Am.Jur.2d, Constitutional Law § 137, at 336.

A footnote to the above citation states that "the principle is one from which there is no dissent in any jurisdiction", followed by citations from most of the states of the United States.

The trial court's finding that plaintiffs would be irreparably damaged was based upon no allegation more definite than those

recited in this opinion plus plaintiffs' statements to the effect that they needed the time between June 23 and July 1 to make distribution to their dealers and that they would be put out of business if the court did not act. The showing of irreparable injury was fatally deficient under the holding of this court in Miller v. Atkinson.[7]

The majority opinion states:

> In order for us to reach the conclusion that the injunction was proper, besides finding the element of irreparable harm, we must decide whether respondents' allegations, if proved at trial, would entitle them to the relief sought.

This is not the proper test. If it were there would be no need for Civil Rule 65 and its requirement that there must be a clear showing, under oath, of immediate and irreparable injury by specific facts. Under the test adopted by the majority any type of notice pleading capable of being "proved at trial, would entitle them to the relief sought."

The majority mentions the fact that the state made "no showing at all as to what interest would be served by any of the provisions of this statute, other than the claims that all laws are to protect the public." No other claim needed to be made. The state was not required to respond to plaintiffs' broad unsupported allegations and show that the legislature was justified in enacting the legislation. It was conceded to be a validly enacted statute and to be an exercise of the state's police power. The resulting presumption of validity was in no way rebutted by any of plaintiffs' allegations. Plaintiffs charged that the statute was "unreasonable," "confiscatory," "in excess of the police power," etc. without making any showing of how or why and specifically how it affected the plaintiffs in their business.

The restraining order and injunction should not have been granted. The stay was granted so that the state could prosecute a writ of review. Since the state received most of the relief it requested and the issues are for the most part moot, the state is under no obligation to prosecute the writ, in my opinion.

7. 365 P.2d 550, 552 (Alaska 1961).