Darion **POWELL** et al., Petitioners,

v.

**CITY OF ANCHORAGE**, Respondent.

No. 2001.

Supreme Court of Alaska.

Decided June 27, 1973.

June 13, 1975.

Released for Publication June 13, 1975.

Stanley P. Cornelius, Cornelius, Inc., Anchorage, for petitioners.

John R. Spencer, City Atty., Anchorage, for respondent.

Before RABINOWITZ, Chief Justice, and CONNOR, ERVIN, BOOCHEVER and FITZGERALD, Justices.

## ORDER *

RABINOWITZ, Chief Justice.

Petitioner Darion Powell owns an Anchorage cocktail lounge known as The Embers. The Embers, and several other local bistros, have in recent times gained a measure of notoriety by providing for their customers' viewing pleasure "topless and bottomless" dancers. Section 4-3(g) and (r) of the Code of Ordinances of the City of Anchorage prohibits a person from either appearing or authorizing another person to appear "in a licensed premises in which intoxicating liquor is offered for sale or consumed" while so "costumed or dressed so that the genitalia or pubic area is wholly or substantially exposed to view." On October 28, 1972, Powell, Powell's bartender petitioner George Goolsby, and petitioner Sheila Diane Bell were all arrested following a dance by Ms. Bell. The complaint charged, *inter alia,* that Bell had performed her dance in a licensed liquor establishment while "dressed or costumed" in a fashion prohibited by the ordinances.

The petitioners, shortly thereafter, filed a civil action against the City of Anchorage in which they asked the court to declare the ordinances unconstitutional and to permanently enjoin the City from further arrests and prosecutions under those ordinances. The superior court granted petitioners a preliminary injunction on November 27, 1972. Then on May 24, 1973, the superior court granted the City's motion for summary judgment, dismissed the petitioners' complaint with prejudice, and dissolved the preliminary injunction. Notice of appeal was filed on May 25, 1973. Petitioners have now presented this Court with an application for an order staying the May 24, 1973, order of the superior court. We deny petitioners' motion.

■ Judgments in actions for injunctions are not stayable as of right. Under Alaska Rule of Civil Procedure 62(c) the superior court is empowered to "suspend, modify, restore or grant" an injunction pending an appeal from a final judgment granting or denying an injunction. Whether a stay of an injunction pending appeal will be granted is a question directed to the sound discretion of the court.[1] In considering whether to grant such an injunction, the lower court must consider criteria much the same as it would in determining whether to grant a preliminary injunction.[2]

■ The Supreme Court may also, in the exercise of its jurisdiction and "as part of its traditional equipment for the administration of justice," stay the enforcement of a judgment pending the outcome of an appeal.[3] Alaska Rule of Appellate Proce-

---

* This case was not placed in the Pacific Reporter at the time it was decided. Because various counsel have made reference to it in connection with other cases, it is now being published.

1. Shinholt v. Angle, 90 F.2d 297 (5th Cir. 1937); Kim v. Chinn, 20 Cal.2d 12, 123 P. 2d 438 (Cal.1942).

2. *See* 7 J. Moore, Federal Practice ¶ 62.05, at 62–24 (2d ed. 1972). Professor Moore suggests a four factor test:
   (1) the likelihood that the petitioner will prevail on the merits of the appeal,
   (2) irreparable injury to the petitioner unless the stay is granted,
   (3) no substantial harm to other interested persons, and
   (4) no harm to the public interest.
7 J. Moore, *supra* ¶ 62.05, at 62–25. *See also* Perry v. Perry, 88 U.S.App.D.C. 337, 190

F.2d 601 (1951); A. J. Industries, Inc. v. Alaska Public Service Commission, 470 P.2d 537 (Alaska 1970). Professor Moore observes that it may be the unusual case in which the trial judge would arrive at the conclusion that appellant is likely to prevail on appeal. But, that may occur in areas of the law where doubt clouds the correctness of the decision; and, there the court may stay an injunctive order.
   Civil Rule 65(d) requires that *every* order granting an injunction shall set forth the reasons for its issuance.

3. State v. Norene, 457 P.2d 926, 927 (Alaska 1969) (quoting with approval Scripps-Howard Radio v. Federal Communications Comm'n, 316 U.S. 4, 9–10, 62 S.Ct. 875, 879, 86 L.Ed. 1229, 1234 (1942)).

dure 7(d)(2) regulates the procedure for seeking stays of judgments of the superior court pending appeal. That rule requires that an application for a stay of a judgment should first be made to the superior court and that ordinarily an original application to this court for a stay of judgment pending appeal will not be entertained unless it has previously been denied by the court below.[4] As we held in *State v. Norene*,[5]

> . . . [T]his rule does not require in all cases that applications for stay must be made to the superior court, . . . [nevertheless] departure from the rule should be accompanied by some explanation for the failure to apply to the superior court.[6]

No application was made to the superior court in this case, and the petitioners offer no explanation for their failure to do so. As Professor Moore states, "[t]he stay or suspension of such judgments often involves a delicate balancing of the equities that only the court thoroughly familiar with the case is able to make."[7] We think that in the usual case the trial court should first consider an application for a stay of a judgment granting or denying an injunction. The Supreme Court, in *Cumberland Telephone and Telegraph Co. v. Public Service Commission*,[8] noted the desirability of having the trial court first pass on the application for a stay:

> [T]he court which is best and most conveniently able to exercise the nice discretion needed to determine this balance of convenience is the one which has considered the case on its merits, and therefore is familiar with the record.[9]

We think that it is a sound policy for the superior court to first consider applications for stays of judgment. Exceptions from this rule should be made where the applicant makes a showing that relief in the superior court is unavailable; or that relief to be effective must be immediate, and that it is improbable the superior court can afford such immediate relief.[10] Since the petitioners did not present their application for stay to the superior court and since they did not explain this failure, we deny their motion.

We further note the almost total lack of showing offered by petitioners going to the issue of irreparable injury. Here there is no showing that economic hardship or artistic handicaps will flow to petitioners if, pending final resolution of the merits, Bell performs her dance routine in a somewhat more modest fashion than heretofore. Nor has any contention been made before this court by petitioners in their briefs and affidavits that the operation of the injunction pending disposition of the appeal will in any manner infringe First Amendment rights.[11]

---

4. Appellate Rule 25(b) places the same requirement upon the party seeking a stay or an injunction of a judgment.

5. 457 P.2d 926 (Alaska 1969).

6. *Id.* at 929 (footnote omitted).

7. 9 J. Moore, Federal Practice ¶ 208.04, at 1409 (2d ed. 1973).

8. 260 U.S. 212, 43 S.Ct. 75, 67 L.Ed. 217 (1922).

9. *Id.* at 219, 43 S.Ct. at 77, 67 L.Ed. at 223. *See also* People *ex rel.* San Francisco Bay Conservation and Development Commission v. Town of Emeryville, 69 Cal.2d 533, 72 Cal. Rptr. 790, 446 P.2d 790 (Cal.1968).

10. *See* 9 J. Moore, Federal Practice ¶ 208.07, at 1423 (2d ed. 1973).

11. We note in passing that applicants fail to make the following necessary allegations in support of an application for stay of judgment granting or denying injunctive relief: they do not argue the likelihood of success on appeal, nor do they assert that the balance of hardships tips in their direction. *See supra* n. 2.

However, nothing we have said in this order precludes petitioners from moving the superior court to stay its final order. In the event that such a motion is denied, they are free again to seek review from our court.

CONNOR, Justice, with whom ERVIN, Justice, joins (dissenting from the Order Denying Stay):

We respectfully dissent from that portion of the order which denies a stay of the superior court's dissolution of the preliminary injunction.

On or about October 28, 1972, petitioner Bell was charged with a violation of § 4–3(q) of the Code of Ordinances of the City of Anchorage,[1] after performing a nude dance on the stage at the Embers, a bar located at 137 East Fifth Avenue, Anchorage, Alaska, within the corporate limits of the City of Anchorage. Petitioners Powell and Goolsby were charged with violations of § 4–3(r) of the same code,[2] for permitting Bell to perform in the nude.

Section 1.9 of the City of Anchorage Ordinances establishes the penalties of violations:

"Violations of . . . any ordinance of the city may be punished by a fine which shall not exceed three hundred dollars ($300.00) or by imprisonment for not more than thirty days, or by both such fine and imprisonment."

In their original complaint, petitioners allege that these ordinances constitute a prior restraint on their individual right of freedom of expression as guaranteed by the First and Fourteenth Amendments of the United States Constitution. Moreover, in affidavits accompanying their motion for stay before this Court, petitioners state that they will suffer irreparable harm by being subjected to criminal prosecution and penalties. In our opinion, petitioners have thereby raised a meritorious claim under the First and Fourteenth Amendments which require this court carefully to assess the potentially chilling effect of these ordinances on petitioners' rights of free speech and expression.[3]

Reiterating from our recent decision in *Smith v. State,* 510 P.2d 793, 795 (Alaska 1973), ". . . we are . . . deeply sensitive to the dependence of our most cherished rights upon judicial vindication . . . ." Unique among these rights are those guaranteed by the First Amendment, for they are unusually susceptible of infringement, even in the most indirect ways. As the United States Supreme Court said in *Dombrowski v. Pfister,* 380 U.S. 479, 486–87, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965):

"A criminal prosecution under a statute regulating expression usually involves imponderables and contingencies that themselves may inhibit the full exercise of First Amendment freedom . . . . Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights. For free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser . . . . If the rule were otherwise, the contours of regulation would have to be hammered out case by case—and tested only by those hardy enough to risk criminal prosecution to determine the proper scope of regulation . . . . The chilling effect upon the exercise of First Amendment rights may derive from the

1. § 4–3(q) provides:
"It shall be unlawful:

.    .    .    .    .

(q) For a person to appear or be in a licensed premises in which intoxicating liquor is offered for sale or consumed on the premises costumed or dressed so that the genitalia or pubic area is wholly or substantially exposed to public view."

2. § 4–3(r) provides:
"It shall be unlawful:

.    .    . .    .    .

(r) For a licensee or his employee or agent to authorize or permit a person to appear or to be in a licensed premises in which intoxicating liquor is offered for sale or consumed on the premises costumed or dressed so that the genitalia or pubic area is wholly or substantially exposed to public view."

3. "In such a case both the prosecution and the court have a duty to insure that the defendant's rights are not violated." *Hanby v. State,* 479 P.2d 486, 490 (Alaska 1970).

**1232**

fact of the prosecution, unaffected by the prospects of its success or failure." [4]

The specific issue presented at this time is whether to stay the superior court's dissolution of the preliminary injunction. The considerations are functionally identical to those raised by the initial motion for preliminary injunction. Concededly, granting or denying a preliminary injunction is a matter largely within the sound discretion of the trial court. As Judge Bazelon noted in *Perry v. Perry*, 88 U.S.App.D.C. 337, 190 F.2d 601, 602 (1951):

"When a motion for preliminary injunction is presented to a court in advance of hearing on the merits, it is called upon to exercise its discretion 'upon the basis of a series of estimates: the relative importance of the rights asserted and the acts sought to be enjoined, the irreparable nature of the injury allegedly flowing from denial of preliminary relief, the probability of the ultimate success or failure of the suit, the balancing of damage and convenience generally. A mere listing of the guiding considerations demonstrates their intangible nature, especially when no attempt is made at this stage to decide finally the question raised.' Concurring opinion in Communist Party v. McGrath, D.C., 96 F.Supp. 47, 48."

Where a First Amendment question hangs in the balance, however, rights of paramount importance are being asserted, and the threat of an insidious chilling effect on their exercise extends far beyond the particular parties to the litigation. *Dom-*

*browski v. Pfister,* 380 U.S. 479, 488, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965). Therefore, this court must carefully scrutinize the denial or dissolution of a preliminary injunction which tends to expose such rights to premature attack.[5] As we said in *Hanby v. State,* 479 P.2d 486, 490–91 (Alaska 1970):

"*Extraordinary legal remedies to protect First Amendment rights are frequently employed and are constitutionally mandated.* Courts must be ever vigilant to protect the rights of those expounding unpopular views or distributing material thought to be offensive by certain segments of the community. It is these views and these materials that the First Amendment is most often called upon to protect. *In such cases popular disapproval backed by even the threat of official sanction may stifle free expression contemporaneously with the utterance itself.* The First Amendment will not permit the majority to silence the minority for reasons or by methods which are constitutionally infirm. *In the case at bar, the chilling effect of such a prosecution is not hard to imagine.*" (Emphasis added, footnote omitted.)

Turning to the ordinances in question here, on their face they apply only to persons who appear in a specific mode of undress in premises licensed for sale or consumption of intoxicating liquors. A state of undress, by itself, may not necessarily constitute expression protected by the First Amendment.[6] In the case at bar, however, petitioner Bell was arrested while perform-

4. In *Dombrowski*, by contrast with the case at bar, the statute under attack was challenged for overbreadth. The city ordinances here are rather narrowly drawn, and the conduct they proscribe is specifically defined. Both statutes, however, expose the exercise of alleged First Amendment rights to criminal prosecution. In our opinion the potential chilling effect of threatened prosecution is not rendered materially less insidious by virtue of somewhat more precise statutory drafting.

Furthermore, where a statute is challenged for overbreadth, the United States Supreme Court has relaxed the standing requirement

precisely to avoid having "the contours of regulation . . . tested only by those hardy enough to risk criminal prosecution." 380 U.S. at 487, 85 S.Ct. at 1121. Where, as in the case at bar, the challengers are indeed risking criminal prosecution, this Court should be no less solicitous of their First Amendment rights.

5. *See* note 3, *supra.*

6. *See* Yauch v. State, 19 Ariz.App. 175, 505 P.2d 1066, 1072 (1973):

"Nudity per se is not protected by the First Amendment. It cannot be seriously doubted that the state has a legitimate in-

ing a nude dance on the stage. We are satisfied that in this context, her state of undress is assimilable to a theatrical performance[7]—albeit in a place licensed for the sale and consumption of intoxicating liquor—and thus comes under the protective mantle of the First Amendment.[8] We are not satisfied, at least on the record before us, that the United States Supreme Court's recent decision in *California v. La Rue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), necessarily mandates affirmance of the Anchorage City ordinances.

As we, along with the Arizona Court of Appeals, read *La Rue*, the actions which the state sought to proscribe in that case were clearly conduct rather than speech.[9]

We take considerable guidance, however, from the United States Supreme Court's more recent decision in *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). As the Court pointed out, the *Paris Theatre* case arose in the context of a civil proceeding. 413 U.S. at 51, 93 S.Ct. at 2632 n. 1. Commenting on

terest in regulating nudity in certain contexts. In the privacy of the home nudity is not a legitimate object of state interest. But on a crowded street, nudity, albeit exercised without a scintilla of lewd intent, is a matter of some governmental concern. It may constitute a threat to the maintenance of the public peace, it is thrust upon unwilling observers, and at the very least may constitute a traffic hazard. Crownover v. Musick, 18 Cal.App.3d 181, 95 Cal. Rptr. 691 (1971). *Only when nudity becomes a part of a form of expression such as a dance or play does it come under the protective mantle of the First Amendment.* This does not mean that the legislature may not proscribe nude dancing in public streets, since the state may limit the time, place and manner of exercise of the First Amendment rights. *See, e. g.,* Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) ; Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed. 2d 471 (1965) ; Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

The City argues that conduct is being prohibited and not speech. We cannot accept the proposition that a theatrical production or a dance can be dissected into 'speech' and 'nonspeech' components as those terms have been used by the United States Supreme Court. Southeastern Promotions, Ltd. v. City of Atlanta, Georgia, 334 F. Supp. 634 (N.D.Ga.1971). The non-verbal elements in a theatrical production are the very ones which distinguish this form of art from literature. Certainly the City could not claim that it would be entitled to regulate the content of a show by the great mime Marcel Marceau because he is not 'speaking.' " (Emphasis added.)

7. *See* note 6 *supra.*

8. As the court observed in Yauch v. State, 19 Ariz.App. 175, 505 P.2d 1066, 1071 (1973) :

"Dancing is a form of expression and communication. In primitive cultures and ancient civilizations dance was intertwined with all aspects of life. Birth, circumcision, the consecration of maidens, marriage, death, planting and harvest, the celebrations of chieftains, hunting, war, feasts, the changes of the moon, and sickness, all involved the dance. Dances having a sexual message are not new to man. The tribal dances of late Neolithic cultures contained a vivid sexual content. Curt Sachs, World History of the Dance, W. W. Norton & Co., Inc., 1963, p. 216. Dance was and still is practiced among primitive cultures to enact the tribal creation story, important events in the history of the tribe, war, the bravery of its warriors, and sorrow or happiness for departed ancestors. The primitive mode of dance is still being performed, in perhaps a more refined manner, by the modern 'tribes' in which we live. One cannot observe modern dance as evolved by Isadora Duncan and Martha Graham without sensing the sexual overtone of its content. The California Supreme Court has held that dance is a medium of protected expression within the guarantees of the First Amendment to the United States Constitution. In re Giannini, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P.2d 535 (1968)."

9. *See* Yauch v. State, *supra,* 505 P.2d at 1072 n. 2 :

"Some of the conduct mentioned was as follows : Customers were found engaged in oral intercourse with women entertainers; customers engaged in public masturbation; customers placed rolled currency either directly into the vagina of a female entertainer, or on the bar in order for her to pick it up herself. Numerous other forms of contact between mouths of male customers and the vaginal areas of female performers were reported to have occurred."

the relevant Georgia procedure, the Court said:

"Georgia case law permits a civil injunction of the exhibition of obscene materials. See 1024 *Peachtree Corporation v. Slaton*, 228 Ga. 102, 184 S.E.2d 144, (1971); *Walter v. Slaton*, 227 Ga. 676, 182 S.E.2d 464 (1971); *Evans Theatre Corp. v. Slaton*, 227 Ga. 377, 180 S.E.2d 712 (1971). While this procedure is civil in nature, and does not directly involve the state criminal statute proscribing exhibition of obscene material, the Georgia case law permitting civil injunction does adopt the definition of 'obscene materials' used by the criminal statute. Today, in *Miller v. California, supra*, [413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419], we have sought to clarify the constitutional definition of obscene material subject to the regulation by the States, and we vacate and remand this case for reconsideration in light of *Miller*.

This is not to be read as disapproval of the Georgia civil procedure employed in this case, assuming the use of a constitutionally acceptable standard for determining what is unprotected by the First Amendment. On the contrary, *such a procedure provides an exhibitor or purveyor of materials the best possible notice, prior to any criminal indictments, as to whether the materials are unprotected by the First Amendment and subject to state regulation.* See *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 441–444, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). *Here, Georgia imposed no restraint on the exhibition of the films involved in this case until after a full adversary proceeding and a final judicial determination by the Georgia Supreme Court that the materials were constitutionally unprotected. Thus the standards of Blount v. Rizzi,* 400 U.S. 410, 417, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971); *Teitel Film Corp. v. Cusack*, 390 U.S. 139, 141–142, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968); *Freedman v. Maryland*, 380 U.S. 51, 58–59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), *and Kingsley Books, Inc. v. Brown, supra*, 354 U.S. at 443–445, 77 S.Ct. 1325 (1957), *were met.* Cf. *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 367–369, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) (opinion of White, J.)." 413 U.S. at 54, 93 S.Ct. at 2633 (Emphasis added, footnotes omitted.)

At this juncture in the case before us, we must not lose sight of the precise nature of the issue which we are called upon to decide, that is, whether to impose any restraint on petitioners' right of free expression, pending our decision on the constitutionality of the city ordinances. The majority think that this question should, in the first instance, be passed upon by the superior court:

"Since the petitioners did not present their application for stay to the superior court and since they did not explain this failure, we deny their motion."

In our opinion this places a premium on formalities. For the inescapable fact is that on the very day before the instant petition was filed, the superior court dissolved the preliminary injunction which had been in effect for six months. In the context of this dissolution, petitioners could reasonably conclude that an application for stay to the very court that had dismissed their case the previous day would be futile.

The majority also observe that petitioners have made no showing that,

"economic hardships or artistic handicaps will flow . . . if, pending final resolution of the merits, Bell performs her dance routine in a somewhat more modest fashion than heretofore [or] . . . that the disposition of the appeal will in any manner infringe First Amendment rights."

In *Paris Theatre*, however, the United States Supreme Court applauded a state procedure which,

". . . imposed no restraint on the exhibition of the film involved . . . until after a full adversary proceeding and a final judicial determination by the

Georgia Supreme Court that the materials were constitutionally unprotected." 413 U.S. at 55, 93 S.Ct. at 2634 (Footnote omitted.)

The point, of course, is that there is no satisfactory means of compensating people who have been restrained from engaging in constitutionally protected activity pending the pronouncement of the highest state court in which decision can be had. Thus, the highest court in the land has struck the balance in favor of allowing marginal expression to continue until an authoritative pronouncement comes from the State that the expression is clearly outside the bounds of the constitutionally permissible. The majority of this court, by contrast, sanction a restraint on Bell's dance until a final determination by this court that the performance is constitutionally protected. We cannot lend our support to such a topsy-turvy approach to protecting rights as basic as those guaranteed by the First Amendment.

To repeat, the court need not decide the ultimate question of the constitutionality of these ordinances at this time. Yet in its denial of stay, the court takes an unnecessarily rigid stance in an area where rights must be carefully sheltered lest they wither. Mindful of the potentially chilling effect on the rights of others freely to express themselves flowing from enforcement of the ordinance, we would grant the stay in this case.