**SOUTHEASTERN PROMOTIONS, LTD.**

v.

**CITY OF ATLANTA, GEORGIA, et al.**

**Civ. A. No. 15751.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 8, 1971.

636

Mitchell, Pate & Anderson, Atlanta, Ga., for plaintiff.

Thomas F. Choyce, Asst. City Atty., Atlanta, Ga., for defendants.

## MEMORANDUM ORDER AND OPINION

EDENFIELD, District Judge.

■ Stripped of window-dressing and distracting side issues, the naked question in this case is whether municipal officials, solely by reason of their authority to manage a municipal civic center and auditorium, have the unfettered right to censor and monitor the types of speech, and to prescribe the types of productions, which may be performed in such a public auditorium. They do not. United States Constitution, Amendment I.

Plaintiff, a New York corporation, is in the business of promoting entertainment such as live theatrical productions. In July of 1971 its representative, Ralph Bridges, who has frequently booked productions at the Atlanta Civic Center on previous occasions, spoke with Roy Elrod, Director of the Civic Center, and requested a reservation of the Civic Center auditorium from November 23 through December 5 (excluding Thanksgiving Day) for the presentation of a musical play entitled "Hair." Elrod said he did not think "Hair" would be allowed in the Civic Center, but he apparently agreed to informally hold open the dates involved pending a ruling on the matter from the city's Municipal Buildings and Athletic Committee. In September Elrod wrote to Bridges and informed him that the Committee, which

has jurisdiction over the Civic Center, denied the request to present "Hair" at the auditorium. The letter gave no reason for the denial, but Elrod orally informed Bridges, and at the hearing the Chairman of the Committee testified, that it had been the practice of the Committee to restrict the use of the auditorium to wholesome, "family type" productions, and that defendants did not think "Hair" was the proper type of entertainment for a public auditorium. According to a drama critic witness and a theatrical expert, "Hair" is a serious literary production whose theme was the exposure of the hypocrisy and pretense of the contemporary middle-age "establishment" as viewed through the eyes of the younger "hippie" generation. Both witnesses concluded that the production was not obscene or pornographic although in one scene, under subdued lighting and for a period of less than 35 seconds, certain members of the cast appear in the nude and in another scene one member of the cast is draped in or wrapped in an American flag. Both experts expressed the opinion that these two scenes were neither lewd nor unnecessary but somehow represented "freedom" and were relevant to the plot.

■ Plaintiff filed this action based on grounds of diversity and pursuant to 42 U.S.C.A. § 1983 (1970) on the ground that the denial by the defendants of plaintiff's right to display "Hair" constituted a prior restraint on plaintiff's freedom of speech in violation of the First Amendment. On plaintiff's motion the court temporarily restrained the defendants from leasing the auditorium to others during the dates in question pending the outcome of this lawsuit. Since no attack has been made upon the constitutionality of any state statute, a three-judge court is neither required nor proper.

The defendants in due course filed their answer and response in which they seek to raise three defenses: First, that "Hair" is obscene and pornographic and, if presented, would also violate certain criminal statutes of the State of Geor-

gia seeking to punish indecent exposure and desecration of the flag; second, that the play not only involves "speech" within the meaning of the First Amendment but also involves actions, or "nonspeech", which is not protected by that Amendment; and third, that the issues presented were not First Amendment issues but "licensing" issues, their contention being that since the City operates the Civic Center, including the auditorium, not as a governmental function but in a quasi-ministerial (profit-making) capacity, the City should be allowed to prescribe the types of entertainment to be permitted or shown.

■ Earlier in the proceedings defendants also argued that the Director could not have leased the auditorium for the presentation of "Hair" because if he had he would have subjected himself to possible prosecution under those Georgia criminal statutes which prohibit indecent exposure [1] and desecration of the American flag.[2] The rather far-fetched implication of this argument is that since this court might make a determination that the presentation of "Hair" did not violate those Georgia statutes, it would then be interfering with threatened state criminal prosecutions—albeit against defendant Elrod himself. Such federal interference, contended defendants, might be barred by the construction of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), given recently by this court in Cooley v. Endictor, Civil No. 15359 (N.D.Ga., Aug. 25, 1971), which involved the presentation of the musical play entitled "Stomp." At the hearing, however, the Director of the Civic Center denied that he had ever been threatened with criminal prosecution or that he acted because of any threat and testified further that he knew of no state criminal statutes under which such prosecution might be conducted. This testimony clearly distinguishes Cooley v. Endictor, which otherwise might possibly have been in point.

■ For convenience, the court will turn first to the second defense—that theatrical productions are not "speech" protected by the First Amendment. It is true that the Supreme Court has not come face to face with this precise question, but it seems clear that live theatrical productions, no less than novels or motion pictures, are media and organs for the expression of public opinion and the propagation of ideas and critical comments and are entitled to First Amendment protection. The works of Shakespeare are no less "speech" when they are performed on stage than when they appear in print. *Accord*, LaRue v. State of California, 326 F.Supp. 348 (C.D.Cal.1971) (three-judge court); P. B. I. C., Inc. v. Byrne, 313 F.Supp. 757 (D.Mass.1970) (three-judge court), vacated and remanded to consider the question of mootness, 401 U.S. 987, 91 S.Ct. 1222, 28 L.Ed.2d 526 (1971), aff'd on remand, Civil No. 70–508–G (D. Mass., June 16, 1971), petition for cert. filed, 40 U.S.L.W. 3095 (U.S. Sept. 14, 1971) (No. 71–304). *Cf.*, Schacht v. United States, 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970).

Defendants contend, however, that "Hair" is a hybrid of "speech" and "nonspeech" elements. Specifically, they say that when the actors in "Hair" appear in the nude and when an American flag is both wrapped around one actor and used to swing another, there occur "nonspeech" activities which are not accorded First Amendment protection. *See* Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). The Supreme Court has held that:

" * * * [W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968).

1. [1970 Revision] Ga.Code Ann. § 26–2011.

2. [1970 Revision] Ga.Code Ann. § 26–2803.

Therefore, say defendants, they are permitted to more strictly regulate musical plays such as "Hair" than they may "pure" speech which is protected by the First Amendment.

The court cannot accept the proposition that stage productions may be dissected into "speech" and "nonspeech" components as those terms have been used by the Supreme Court. The nonverbal elements in a theatrical production are the very ones which distinguish this form of art from literature. It may be true that First Amendment protections vary in different media, but a musical play must be deemed a unitary form of constitutionally protected expression.[3] The court concludes that the entire musical play "Hair" is speech and entitled to First Amendment protection.[4]

The next question is whether defendants are obligated to provide the facili-

ties at the Atlanta Civic Center to plaintiff; in other words, does plaintiff have a right to present "Hair" at the Civic Center? Defendants vigorously contend that plaintiff has no such right and defendants have no such obligation. They cite Southeastern Promotions, Ltd. v. City of West Palm Beach, Fla., Civil No. 71–1461–Civ–EC (S.D.Fla., Oct. 22, 1971), which is identical in every respect with the instant case, for support. Plaintiff cites Southwest Productions, Inc. v. Freeman, Civil No. LR–71–C–137 (E.D. Ark., Aug. 13, 1971), which is also identical in every respect with the instant case, for support. Those two cases are in clear conflict and this court agrees with Judge Eisele of Arkansas and respectfully disagrees with Senior Judge Choate of Florida.

It should be self-evident that the Atlanta Civic Center is dedicated to the

3. The argument advanced by defendants could be made in any obscene movie case —yet no case has been cited referring to or accepting such a position. In a somewhat analogous vein the Supreme Court specifically rejected the old English test of judging obscenity by the effect of isolated passages and substituted a test by which a work is judged as a whole. Roth v. United States, 354 U.S. 476, 489, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). This standard has been explicitly adopted in the review of allegedly obscene motion pictures. Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). No suggestion has ever been made by the Supreme Court that depictions of sexual conduct in motion pictures are "nonspeech" activities. It is submitted that just as *parts* of a motion picture cannot lose First Amendment protection on grounds of obscenity, so, too, *parts* of a motion picture cannot lose First Amendment protection on grounds they are "nonspeech." It is further submitted that this applies equally to live theatrical productions. In Schacht v. United States, *supra*, the Supreme Court held that an actor's First Amendment right of free speech was abridged by a statute which forbade him from wearing a military uniform as a costume in a theatrical production critical of the war in Vietnam. The late Mr. Justice Black, who wrote the opinion and who was certainly cognizant of the distinction between protected "speech" and unprotected "non-

speech", did not suggest that the wearing of a military uniform in a theatrical production was "nonspeech."

4. Even if defendants' contention had some merit *O'Brien* held that there is a sufficiently important governmental interest in regulating "nonspeech" so as to justify incidental limitations on First Amendment rights only if the governmental regulation

"is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. at 377, 88 S.Ct. at 1679.

As will be shown, the governmental interest defendants assert is directly related to the suppression of non-obscene speech which is protected by the First Amendment. Furthermore, in response to an inquiry from the bench, counsel for defendants stated that they would not be satisfied with the excision of any "objectionable" parts from "Hair." Rather, they seek to prevent its presentation entirely because they feel it is not "family-type entertainment." Clearly defendants' "nonspeech" contention is not acceptable even if tied to *O'Brien*. Accord, LaRue v. State of California, *supra*, 326 F.Supp. at 355.

public use. It was built by the taxpayers of Atlanta. It is managed by the elected and appointed representatives of those taxpayers, it is maintained by the taxpayers, and it is specifically designed to accommodate and attract the taxpayers. Still the court must inquire whether the character and purpose of the Civic Center, the nature of the activities carried on in it, and the population who take advantage of it together render it an appropriate forum for the free expression of ideas. *Accord,* Wolin v. Port of New York Authority, 392 F.2d 83, 89 (2d Cir.), cert. denied, 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1968).

The Atlanta Civic Center was built by the citizens of Atlanta as a multipurpose facility for recreational, commercial and social uses. It contains a large-capacity auditorium, exhibit halls, and meeting rooms. Theatrical productions, business conventions, displays, and meetings of various kinds have been held there, and large segments of the community have frequented these events. Although the theatrical productions presented in the auditorium of the Civic Center in the past could not fairly be characterized as very controversial, political or ideological, they have tended to convey and reinforce those cherished values of many of the citizens of the "straight" world. There can be no question, then, that the Atlanta Civic Center has been a forum in which ideas, however unrevolutionary, have been expressed and communicated repeatedly over a number of years.

 Decisions of the Supreme Court and the lower courts have consistently recognized that a public forum for expression must be available to *all* members of the public for the exercise of First Amendment rights. Thus it has been held that public schools,[5] public libraries,[6] public bus terminals,[7] public college newspapers,[8] public high school newspapers,[9] and public subway walls [10] are public forums in which all members of the public are entitled to exercise freedom of speech. By comparison, a public auditorium is a public forum par excellence! Since 1925 it has been settled that states and municipalities may no more interfere with freedom of speech than may the national government. Gitlow v. New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). It is abundantly clear that defendants have an obligation to make the Atlantic Civic Center—a municipal auditorium—available to all for the exercise of First Amendment rights and that plaintiff may exercise those rights in the Civic Center. Plaintiff's right to do so is in no sense lessened by the fact that they might be able to go elsewhere or that they hope to make money by presenting "Hair." Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 501–502, 72 S.Ct. 777, 96 L.Ed. 1098 (1952).

 We come then to defendants' argument that they are entitled, as managers of a quasi-business venture, to exercise their unfettered judgment over the content of expression in the Civic Center. They support this argument by saying that the Civic Center has an "image" for the presentation of "family-type

5. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

6. Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966).

7. Wolin v. Port of New York Authority, *supra.*

8. Trujillo v. Love, 322 F.Supp. 1266 (D. Col.1971). This is to be distinguished from a public university's law school review which is neither conceived nor used as a general forum for the exchange of ideas but as a limited medium for the publication of high-quality legal articles. There is no First Amendment right to express oneself in such a publication even if the expression is related to law. Avins v. Rutgers, State University of New Jersey, 385 F.2d 151 (3d Cir. 1967).

9. Zucker v. Panitz, 299 F.Supp. 102 (S.D. N.Y.1969).

10. Kissinger v. New York City Transit Authority, 274 F.Supp. 438 (S.D.N.Y. 1967).

entertainment" and that it would suffer great financial harm if it presented entertainment which did not conform to this "image." Bluntly put, defendants say they may censor. The court disagrees. Indeed, one only hopes the gentle soul of Mr. Justice Black was not hovering over this courtroom when defendants propounded this argument.

If little else is certain, it is most assuredly certain that the First Amendment unreservedly, forthrightly, and resoundingly prohibits such censorship. Even if defendants are acting with the best of intentions—and this court does not doubt that—they simply may not dictate what the public may view and what it may not. United States Servicemen's Fund v. Shands, 440 F.2d 44 (4th Cir. 1971). To be sure freedom of speech is not an absolute right. The City may set up various procedural rules so that one person cannot monopolize the Civic Center or use it for a purpose for which it is not physically suited. *See, generally,* Cox v. Louisiana, *supra.* Here, however, there hàs been no contention that plaintiff has not complied or will not comply with the procedural rules and technical regulations promulgated by the Civic Center.

Defendants' contention is not advanced by their attempts to characterize the grant or denial of permission to use the Civic Center as a municipal licensing function. Both Director Elrod and Chairman Cotsakis of the Municipal Buildings and Athletic Committee testified that there are absolutely no guidelines or standards whatsoever governing defendants' decisions in this regard. They resort only to their subjective feelings.[11] This is an unconstitutional method of decision and selection.

"[A] municipality may not empower its licensing officials to roam essentially at will, dispensing or withholding permission to speak, assemble, picket, or parade, according to their own opinions regarding the potential effect of the activity in question on the 'welfare', 'decency', or 'morals' of the community." Shuttlesworth v. Birmingham, 394 U.S. 147, 153, 89 S.Ct. 935, 940, 22 L.Ed.2d 162 (1969).

Defendants assert that "Hair" is obscene and therefore subject to prior restraint. Of course, as the Supreme Court has so recently reaffirmed, any imposition of prior restraint upon expression bears a heavy presumption of constitutional invalidity. New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). Traditionally, public officials who attempt such prior restraint have been able to justify it only by showing an overwhelming contrary state interest, such as a "clear and present danger" of great violence and severe injury. Nevertheless, the Supreme Court has determined that obscenity is not entitled to First Amendment protection. Roth v. United States, *supra.* The Court has held that public officials may impose a prior restraint upon obscene motion pictures, Times Film Corp. v. Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961), as long as certain safeguards are observed, and it would follow that the same applies to live theatrical performances.

The only evidence defendants have offered to prove that "Hair" is obscene is the libretto of the play itself and a critical quotation from a local columnist. Defendants have directed the court's attention to various foul words which appear

11. Elrod did say he also participates in an informal underground "network" of municipal auditorium managers who regularly exchange information on various types of entertainment. Many of those managers sent letters to Elrod saying "Hair" was not suitable for public auditoriums. Obviously these managers share Elrod's mistaken belief that a manager of a public auditorium is the equivalent of the Lord Chamberlain in England, censor of the stage. However, at least one manager disagreed and wrote:
"Ours is a municipal auditorium— built by the people to see all types of entertainment. People who object to ["Hair"] need not attend."

in the libretto and have also made much of the 35 seconds of nudity. Plaintiff has offered the testimony of the expert witnesses already referred to and several reviews by theatrical critics to the effect that "Hair" is not obscene under the Supreme Court's definition of that term.[12]

 Having considered the libretto and all the evidence, the court concludes that, whatever else it may be, "Hair" is not obscene.[13] Moreover, the foul words and nudity, far from rendering "Hair" obscene, are in and of themselves constitutionally protected forms of expression which may not be censored by state action. The Supreme Court (per Mr. Justice Harlan) in Manual Enterprises v. Day, 370 U.S. 478, 490, 82 S.Ct. 1432, 1438, 8 L.Ed.2d 639 (1962), observed:

"Of course not every portrayal of male or female nudity is obscene."

In *Roth* the Court recognized that

"The portrayal of sex, *e.g.*, in art, literature, and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press." 354 U.S. at 487, 77 S.Ct. at 1310.

As for foul words, the Court (again per Mr. Justice Harlan) recently held that such "obscenities" do not, standing alone, constitute obscene expression. Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).

Defendants also seek to justify a prior restraint by pointing to the use of the American flag as a prop in the play. As already noted, the flag is wrapped around one actor and used to swing another during the performance.

 Recently the Supreme Court was faced with a federal statute which prohibits an actor portraying someone in the military from wearing a military uniform as a costume if the play in which the actor appears is critical of the military. The Court reversed the conviction of an actor who had been convicted for violating this statute and held that it constituted an abridgement of the actor's First Amendment right of free speech. Schacht v. United States, *supra*. It would follow from this that the mere use of an American flag as a prop in "Hair" can in no way justify the imposition of a prior restraint on the performance of the play.

Finally, defendants contend that the 35 seconds of nudity and the use of the American flag as a prop may violate Georgia law and defendants have a right to prevent the occurrence of such violations. The statutes involved, as already mentioned, are [1970 Revision] Ga.Code Ann. § 26–2011 and [1970 Revision] Ga. Code Ann § 26–2803.

 First, the court holds that the mere raising of the possibility of criminal violations does not justify the imposition of a prior restraint upon expression. *See* New York Times Co. v. United States, *supra* (concurring opinion of Mr. Justice White). Second, the court holds that the nudity and the use of the American flag as a prop do not constitute violations of those Georgia statutes. Section 26–2011 states:

"*Public indecency.*—A person commits public indecency when he per-

12. The Court has defined obscenity as follows:
 "(a) [T]he dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matter; and (c) the material is utterly without redeeming social value."
 A Book named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L. Ed.2d 1 (1966).

13. The same conclusion has been reached by a three-judge federal court in Massachusetts [P.B.I.C., Inc. v. Byrne, *supra*], Judge Eisele in Arkansas [Southwest Productions, Inc. v. Freeman, *supra*], the Attorney General of Florida [The Atlanta Constitution, Oct 14, 1971, at 17–A, col. 1], and the Police Department of St. Louis, Missouri [The Atlanta Constitution, Nov. 4, 1971, at 21–A, col. 1].

forms any of the following acts in a public place and upon conviction shall be punished as for a misdemeanor:

(a) An act of sexual intercourse;

(b) A *lewd* exposure of the sexual organs;

(c) A *lewd* appearance in a state of partial or complete nudity;

(d) A *lewd* caress or indecent fondling of the body of another person." (Emphasis added.)

Typically, such public indecency statutes are meant to cover situations in which an unsuspecting public is subjected to certain "indecent" acts. Audiences in theatrical performances are not unsuspecting and are generally forewarned and willing. P.B.I.C., Inc. v. Byrne, *supra*. Moreover, the Georgia statute proscribes *lewd* exposure, nudity, and fondling. Mere nudity as emphasizing a theatrical theme is not lewd and does not violate Section 26–2011.[14]

Section 26–2803 states:

"*Misuse of National or State flag.*— A person who deliberately mutilates, defaces, or defiles the flag of the United States or the State of Georgia or who uses such flag or flags for commercial advertising purposes is guilty of a misdemeanor."

The mere use of an American flag as a prop in "Hair" is not a mutilation, defacement, or defilement of the flag nor does it constitute a use for commercial advertising purposes. The use of the American flag in "Hair" does not violate Section 26–2803.

## SUMMARY

The evidence at the hearing was that "Hair" has been presented in over 100 American cities and 14 world capitals. Of the 100 American theaters in which "Hair" has played, approximately 30 have been municipal auditoriums, including those of Little Rock, Arkansas, Salem, Virginia, and Spartanburg, South Carolina. The Constitution of the United States commands that, as against the objections made, and upon payment of the appropriate fee, plaintiff have the opportunity to present "Hair" at the Atlanta Civic Center as well.

---

14. There has been no allegation that an act of sexual intercourse occurs during the performance of "Hair."