505 P.2d 1066

**Edgar D. YAUCH and Leota J. Porter, Petitioners,**

**v.**

**STATE of Arizona et al., and CITY OF TUCSON, Pima County, Arizona, the Real Party in Interest, Respondents.**

**No. 2 CA–CIV 1341.**

Court of Appeals of Arizona, Division 2.

Feb. 6, 1973.

Rehearing Denied March 14, 1973.

Review Granted April 3, 1973.

John W. Ross, Jr., Tucson, for petitioners.

Herbert E. Williams, Tucson City Atty., by William E. Hildebrandt, Asst. City Atty., Tucson, for respondents.

Messing, Hirsh & Franklin, P. C., by Robert J. Hirsh and George J. Feulner, Tucson, amicus curiae.

HOWARD, Judge.

In this special action the petitioners have asked the court to declare unconstitutional the so-called "topless and bottomless" ordinances promulgated by the City of Tucson. In order to prevent further expenditure of judicial time and money in the city, superior and appellate courts of this state we have assumed jurisdiction.

Petitioners were originally charged in city court with violating the following ordinances of the City of Tucson:

"Sec. 11–25.1. Clothing requirements of certain female entertainers and waitresses.

Any female entertaining or performing any dance or in any play, exhibition, show or other entertainment, or any female serving food or spiritous [sic] liquors as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, in a restaurant, nightclub, bar, cabaret, tavern, tap room, theater, or in a private, fraternal, social, golf or country club, as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, or in any public place, who appears clothed, costumed, unclothed or uncostumed in such a manner that the nipple and the aureola (the more darkly pigmented portion of the breast encircling the nipple) are not firmly covered by a fully opaque material, is guilty of a misdemeanor. (Ord. No. 3053, § 1, 10–16–67)

Sec. 11–25.2. Operation of certain restaurants, etc. where female entertainers fail to meet certain clothing requirements deemed misdemeanor.

A person who knowingly conducts, maintains, owns, manages, operates or furnishes any restaurant, nightclub, bar, cabaret, tavern, tap room, theater, or any place serving food or spirituous liquors, as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, or a private, fraternal, social, golf or country club, as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended or any public place, where a female appears clothed, costumed, unclothed or uncostumed in such a manner that the nipple and the aureola (the more darkly pigmented portion of the breast encircling the nipple) is not firmly covered by a fully opaque material, is guilty of a misdemeanor. (Ord. No. 3053, § 1, 10–16–67)

Sec. 11–25.3. Clothing requirements of certain dancers. etc.

Any person entertaining or performing any dance or in any play, exhibition, show or other entertainment, or any person serving food or spirituous liquors as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, in a restaurant, nightclub, bar, cabaret, tavern, tap room, theater, or in a private, fraternal, social, golf or country club, as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, or in any public place, who appears clothed, costumed, unclothed or uncostumed in such a manner that the lower part of his or her torso, consisting of the private parts or anal cleft or cleavage of the buttocks, is not covered by a fully opaque material or is so thinly covered as to appear uncovered, is guilty of a misdemeanor. (Ord. No. 3053, § 1, 10–16–67)

Sec. 11–25.4. Operation of restaurants, etc. where certain dancers, etc. fail to meet certain clothing requirements, deemed misdemeanor.

A person who knowingly conducts, maintains, owns, manages, operates or furnishes any restaurant, nightclub, bar, cabaret, tavern, tap room, theater, or any place serving food or spirituous liquors, as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, or a private fraternal, social, golf or country club as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, or any public place, where any person appears clothed, costumed, unclothed or uncostumed in such a manner that the lower part of his or her torso, consisting of the private parts or anal cleft or cleavage of the buttocks, is not covered by a fully opaque material or is so thinly covered as to appear uncovered, is guilty of a misdemeanor. (Ord. No. 3053, § 1, 10–16–67)"

The petitioners pleaded guilty to the violations in the city court and appealed to the Pima County Superior Court. A motion to dismiss was made by petitioners on the ground of unconstitutionality. Upon denial of their motion they filed this petition for special action.

Petitioners contend that the ordinances in question conflict with the First and Fourteenth Amendments to the United States Constitution. Respondents parry this attack by asserting that the ordinances regulate conduct and not speech or expression.

 We first note that the petition for special action was not preceded by any evidentiary hearing in the superior court. The exact nature of petitioners' conduct and the circumstances under which it occurred have not been established as fact. This lack of evidence, however, does not preclude appellate review. It is clear that where First Amendment rights are concerned the statute itself and not the evidence establishes the boundaries of permissible conduct. Thus an ordinance must be held invalid if it fails to meet required criteria even though an accused's conduct might have run afoul of a statute which could have been adopted in satisfaction of those criteria. Burton v. Municipal Court of Los Angeles Judicial District, 68 Cal.2d 684, 68 Cal.Rptr. 721, 441 P.2d 281 (1968). As stated in Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940):

"It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion. * * * An accused, * * * does not have to sustain the burden of demonstrating that the State could not constitutionally have written a different and specific statute covering his activities as disclosed by the charge and the evidence introduced against him. * * * Where regulations of the liberty of free discussion are concerned, there are special reasons for observing the rule that it is the statute, and not the accusation or the evidence under it, which prescribes the limits of permissible conduct and warrants against transgression."

 Furthermore, although the general rule is that one may not question the constitutionality of a provision as it may apply to others, United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 24 (1960), there are exceptions to this rule. One important exception is that where a provision restricting free speech and the free dissemination of ideas is involved, a court may, in considering the claim of overbreadth, take into account the operation of the provision as to factual situations other than the one at bar. N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Thornhill v. Alabama, supra; Fort v. Civil Service Commission of County of Alameda, 61 Cal.2d 331, 38 Cal.Rptr. 625, 392 P.2d 385 (1964).

At the outset we note the recent United States Supreme Court decision, California

et al. v. LaRue et al., 409 U.S. 109, 93 S. Ct. 390, 34 L.Ed.2d 342 (1972) and the grounds upon which that decision rests. In that case the Court considered the authority of the California Department of Alcoholic Beverage Control to pass regulations governing topless and bottomless dancing in bars and nightclubs. The Court upheld the regulations *solely* under the power granted to the states by the Twenty-first Amendment to the United States Contitution which gives the states the absolute power to regulate the dispensing of alcoholic beverages within their respective borders.

Turning to the ordinances in question, it is readily apparent that they apply not only to nightclubs, restaurants and bars, but also to theatrical performances which may take place in the "respectable" setting of the stage of the Tucson Community Center. It is also readily apparent that the ordinances do not require the conduct to be obscene. Thus, the ordinances apply to the 35-second nude scene in "Hair" which was performed on the stage of the Tucson Community Center (although no attempt was made to arrest any of the cast of "Hair"), as well as to the topless female folkdancers from the Republic of Mali who also appeared on the stage of the Tucson Community Center (although no attempt was made to arrest these dancers from the Republic of Mali).[1] The ordinances would also apply to restaurants, nightclubs and bars where minors are not admitted and where the dancing occurs inside the premises with the consent and knowledge of the patrons.

We fully recognize that under the doctrine of separation of powers the wisdom, necessity, propriety or expediency of a statute or ordinance are matters exclusively within the province of the legislative body enacting the same and that the judiciary cannot sit as a super legislature. We therefore will not comment on whether legislative bodies should decide what adult members of the population may see, hear and think. Nor shall we comment on governmental attempts to regulate the morals of its adult citizens. Further, we shall not comment on whether a government can ever prevent adults from seeing, hearing, reading and thinking that which they desire to see, hear, read and think. The power to declare laws unconstitutional must be used sparingly and with the utmost restraint. Any inclination to extend this prerogative on society as a whole must be firmly rejected. By reason of their protected, cloistered existence, judges are singularly ill-equipped for participation in the law making process. As Justice Frankfurter once said:

" . . . Courts are not representative bodies. They are not designed to be a good reflex of a democratic society. Their judgment is best informed, and therefore most dependable, within narrow limits. Their essential quality is detachment, founded on independence. History teaches that the independence of the judiciary is jeopardized when courts become embroiled in the passions of the day and assume primary responsibility in choosing between competing political, economic and social pressures." Mr. Justice Frankfurter concurring in Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

In testing the constitutionality of the ordinances in question, we apply the following rules: (1) There is a presumption in favor of the constitutionality of a legislative enactment, State v. Krug, 96 Ariz. 225, 393 P.2d 916 (1964); (2) the person assailing the validity of a statute or ordinance has the burden of establishing that it infringes a constitutional guarantee or violates a constitutional principle. State v. Krug, supra; (3) the court must be satisfied beyond a reasonable doubt that the

1. The Tucson Community Center is owned and operated by the City of Tucson. All entertainment is booked into the center by the City. We find it somewhat ironic that the City which is the prosecutor in this case does not choose to obey its own ordinances.

statute is unconstitutional, Shaw v. State, 8 Ariz.App. 447, 447 P.2d 262 (1968); (4) every intendment must be indulged in favor of the validity of a statute, Shaw v. State, supra; and (5) constitutional provisions shall not be given a construction which will nullify legislation but must be liberally construed. Shaw v. State, supra.

▮▮▮ The foregoing rules are subject to the caveat that if a First Amendment right to freedom of speech or expression is abridged by the ordinances, then they can be upheld only by the showing of a compelling state interest, Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L. Ed.2d 480 (1960), and the further caveat that constitutionally permissible restrictions on First Amendment rights must be drawn with narrow specificity. Glancy v. County of Sacramento, 17 Cal.App.3d 504, 94 Cal. Rptr. 864 (1971), hearing granted Aug. 13, 1971.

▮▮▮ The rights guaranteed by the First Amendment to the United States Constitution apply not only to the spoken word. The First Amendment involves a much broader concept, and guarantees freedom of "speech" no matter what its form. It guarantees the freedom to communicate ideas whether they are informative in nature or merely entertaining. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). This freedom of expression, this freedom to communicate one's ideas, is protected by the First Amendment even when expressed in non-speech form. See e.g., Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), (armbands as protected symbolic speech); Brown v. State of Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966), (sit-in demonstrations); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), (flag salute ceremonies); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), (labor picketing); Stromberg v. People of State of California, 283 U.S. 359, 51 S.Ct.

532, 75 L.Ed. 1117 (1931), (display of a red flag).

Dancing is a form of expression and communication. In primitive cultures and ancient civilizations dance was intertwined with all aspects of life. Birth, circumcision, the consecration of maidens, marriage, death, planting and harvest, the celebrations of chieftains, hunting, war, feasts, the changes of the moon, and sickness, all involved the dance. Dances having a sexual message are not new to man. The tribal dances of late Neolithic cultures contained a vivid sexual content. Curt Sachs, World History of the Dance, W. W. Norton & Co., Inc., 1963, p. 216. Dance was and still is practiced among primitive cultures to enact the tribal creation story, important events in the history of the tribe, war, the bravery of its warriors, and sorrow or happiness for departed ancestors. The primitive mode of dance is still being performed, in perhaps a more refined manner, by the modern "tribes" in which we live. One cannot observe modern dance as evolved by Isadora Duncan and Martha Graham without sensing the sexual overtone of its content. The California Supreme Court has held that dance is a medium of protected expression within the guarantees of the First Amendment to the United States Constitution. In re Giannini, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P. 2d 535 (1968). That nude dancing per se is not without the protection of the First Amendment appears to have been recognized by the United States Supreme Court in California v. LaRue, supra, when it stated:

". . . While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments which it licenses to sell liquor by the drink.

. . . This is not to say that all such conduct and performance is without the

protection of the First and Fourteenth Amendments. But we would poorly serve both the interests for which the State may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of Bacchanalian revelries which the Department sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troupe in a theater." (Emphasis added)

It is clear that the actions which the state sought to proscribe in California v. LaRue, supra, were indeed conduct and not speech.[2]

In *Giannini*, supra, the court held that the performance of a dance, whether ballet or a lesser artistic form, warranted the protection of the First Amendment, absent proof of its obscenity as defined by the California Code. The court stated that acts which are unlawful in a different context, circumstance, or place, may be depicted or incorporated in a stage or screen presentation and come within the protection of the First Amendment, losing that protection only if found to be obscene.

■ The proper legislative body may, however, prohibit the performance of an obscene dance provided that constitutional standards are met in determining obscenity.

■ Nudity per se is not protected by the First Amendment. It cannot be seriously doubted that the state has a legitimate interest in regulating nudity in certain contexts. In the privacy of the home nudity is not a legitimate object of state interest. But on a crowded street, nudity, albeit exercised without a scintilla of lewd intent, is a matter of some governmental concern. It may constitute a threat to the maintenance of the public peace, it is thrust upon unwilling observers, and at the

very least may constitute a traffic hazard. Crownover v. Musick, 18 Cal.App.3d 181, 95 Cal.Rptr. 691 (1971). Only when nudity becomes part of a form of expression such as a dance or play does it come under the protective mantle of the First Amendment. This does not mean that the legislature may not proscribe nude dancing in public streets, since the state may limit the time, place and manner of exercise of the First Amendment rights. *See, e. g.,* Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L. Ed.2d 471 (1965); Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

The City argues that conduct is being prohibited and not speech. We cannot accept the proposition that a theatrical production or a dance can be dissected into "speech" and "nonspeech" components as those terms have been used by the United States Supreme Court. Southeastern Promotions, Ltd. v. City of Atlanta, Georgia, 334 F.Supp. 634 (N.D.Ga.1971). The non-verbal elements in a theatrical production are the very ones which distinguish this form of art from literature. Certainly the City could not claim that it would be entitled to regulate the content of a show by the great mime Marcel Marceau because he is not "speaking".

The leading case on the distinction between speech and conduct and the right of the government to regulate the latter is United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In that case the Court held that:

". . . [W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify

---

2. Some of the conduct mentioned was as follows: Customers were found engaged in oral intercourse with women entertainers; customers engaged in public masturbation; customers placed rolled currency either directly into the vagina of a female entertainer, or on the bar in order for her to pick it up herself. Numerous other forms of contact between mouths of male customers and the vaginal areas of female performers were reported to have occurred.

incidental limitations on First Amendment freedoms."

Even under the O'Brien case the City of Tucson's contention must fail. In *O'Brien* the Court further held that there is a sufficiently important governmental interest in regulating "nonspeech" so as to justify incidental limitations on First Amendment rights provided, however, that the government regulation "is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

Nudity is not per se obscene. Manual Enterprises, Inc. v. Day, 370 U.S. 478, 490, 82 S.Ct. 1432, 1438, 8 L.Ed.2d 639, 648 (1962). Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The City's assertion of its right to regulate conduct is related to the nudity aspect of the dance. But, under *O'Brien* there is no sufficient governmental interest since the government has no right to prohibit non-obscene conduct. Southeastern Promotions, Ltd. v. City of Atlanta, Georgia, supra.

We must also observe that the thrust of the City's ordinances cuts much deeper than the superficial question posed by the case at hand. The theater has historically been the arena for social and political comment. The entertainment need not be "in proscenium" to constitute a "theatrical performance". *Cf.*, Schacht v. United States, 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970). The stage and setting of a bar or nightclub may be more plebeian than the "haute grandeur" of the ballet stage, but it is "theater" nevertheless. To allow the government to censure or prohibit performances that are not obscene or do not present a clear and present danger would be devastating to the exercise of the free exchange of ideas. The government is not the arbiter elegantiarum (the supreme authority in matters of taste)—*chacun à son goût*.

We recognize that two jurisdictions have upheld the validity of various types of ordinances regulating dancing in nightclubs. They are City of Portland v. Derrington, 253 Or. 289, 451 P.2d 111 (1969) and Hoffman v. Carson, 250 So.2d 891 (Fla. 1971).

In *Derrington*, the Oregon Supreme Court based its decision on the fact that nudity was being employed as a sales promotion in bars and restaurants and was therefore "conduct". We do not find this reasoning to be persuasive. A profit motive does not prevent expression from being safeguarded by the First Amendment. Joseph Burstyn, Inc. v. Wilson, supra; Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

The Hoffman case, decided by the Supreme Court of Florida, follows the Oregon case, and rests upon the assumption that nudity per se is obscene and can be regulated by the government.[3] As we have previously stated we disagree with such a contention.

We hold that the ordinances in question are invalid, but we do find that

---

3. The Florida statute, F.S.A., provides:
"§ 800.03. *Exposure of sexual organs.* —It shall be unlawful for any person to expose or exhibit his sexual organs in any public place or on the private premises of another, or so near thereto as to be seen from such private premises, in a vulgar or indecent manner, or so to expose or exhibit his person in such place, or to go or be naked in such place. Provided, however, this section shall not be construed to prohibit the exposure of such organs or the person in any place provided or set apart for that purpose. Any person convicted of a violation hereof shall be punished by a fine of not more than five hundred dollars or by imprisonment in the county jail for a period of not more than six months, or by both such fine and such imprisonment, in the discretion of the court."

those portions of §§ 11–25.1 and 11–25.3 which prescribe clothing requirements for those serving food and drink are constitutional. Naked waiters and waitresses are not entitled to First Amendment protection on the basis that their nudity is a form of expression of ideas, symbolic expression, or visual communication, and therefore the proscription against their nudity is valid, severable from the invalid portions concerning entertainers, and enforceable. Crownover v. Musick, supra.

Relief is granted and the trial court is ordered to dismiss the charges against the petitioners.

KRUCKER, J., concurs.

HATHAWAY, Chief Judge (dissenting).

I respectfully dissent. Simply stated, my position is that nudity is conduct and subject to regulation. The wisdom and necessity of such regulation is a legislative, rather than a judicial prerogative.