Susanne Marie **HAINES**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–17928.

Court of Criminal Appeals of Oklahoma.

June 13, 1973.

Rehearing Denied Aug. 8, 1973.

Bulla & Horning, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Charles F. Alden, III, Legal Intern, for appellee.

## OPINION

### PER CURIAM:

Appellant, Susanne Marie Haines, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, for the offense of Indecent Exposure. Her punishment was fixed at a fine of five thousand dollars ($5,000) and a term of two (2) years imprisonment, said term being suspended by the trial court. From said judgment and sentence, a timely appeal has been perfected to this Court.

Briefly stated, the evidence at the trial adduced that defendant was a professional entertainer who had performed her dance in numerous states over a three year period. Prior to her performance at the Playgirl Club in Oklahoma City, Oklahoma, on the night of February 22, 1972, defendant had been awarded the title of "Miss Nude Universe." As a result of her title, she had understandably gained certain national notoriety and her presence in Oklahoma City was publicized by the local news media. The publicity included a certain television interview made prior to her performance on the evening in question.

The performance leading to defendant's arrest occurred on the stage of the local Oklahoma City night club before an audience which paid to attend. The dance lasted for approximately thirty minutes with defendant performing entirely nude for a short period at the end of the performance. The room containing the stage was entirely shielded from the view of the outside world. Those who entered had to pass through a door in close proximity to a large sign stating "Nude performance inside; if nudity offends you, do not enter." Upon passing through the first door, one was met by an individual who checked identification cards for proof of legal age. Upon signing a register confirming that he did not find nudity offensive and paying an admission price, the person seeking admission was permitted to pass through a second door leading to the stage area.

The arresting officers testified that they did not sign the roster, but entered the club in their official capacities as police officers. After observing the entire performance, defendant was arrested and charged with the crime of indecent exposure.

A television news reporter and his photographer testified that they arrived early on the night of the performance and sought and obtained permission to interview defendant and to film portions of her dance. Both testified that the audience received the performance with loud applause, that no one indicated that they were offended and that they personally were not annoyed or offended by the performance.

During the State's case-in-chief, the State introduced into evidence over the strenuous objection of defendant the news film taken of her performance and her interview prior to same. The film of her prior interview contained certain voluntary statements by defendant that she had been arrested in other states.

After the close of the State's evidence, Lester Ewell Smith, Jr., an employee of the Playgirl Club, testified concerning the procedures used in admitting persons to the performance as set out above.

Defendant then took the stand to testify in her own behalf. She stated that she was a professional dancer with instruction in modern jazz interpretative dancing. Defendant further testified, in essence, that prior to her performance she intended to perform nude, and she was cognizant of the precautions taken to deter anyone from entering who might be annoyed or offended. Under cross-examination, defendant testified that one of the purposes of her performance was to arouse a sexual emotion on the part of the audience.

Defendant raises numerous propositions of error in her brief. However, we shall consider only two for reasons which will become apparent. Defendant first urges that the trial court erred in overruling the demurrer to the evidence interposed by defendant upon the grounds that the State

wholly failed to establish the essential elements of the crime of indecent exposure; or, in the alternative, the evidence was not sufficient to sustain a conviction.

Defendant was prosecuted for an alleged violation of the Oklahoma indecent exposure law, 21 O.S.1971, § 1021(1), as amended, provides as follows:

> "Every person who wilfully either: (1) lewdly exposes his person, or private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby . . . is guilty of a felony . . ."

In Davison v. State, Okl.Cr., 281 P.2d 196, defendant while entirely nude displayed himself from his garage and through the back door thereof to a neighbor lady. The first time the neighbor observed defendant he was making motions to her and masturbating. Subsequent to this exhibition, she went into her house where she and two of her neighbor friends observed defendant through her kitchen window for a period from fifteen to thirty minutes. The Court, after considering these facts, held as follows:

> "We are of the further opinion that there is little distinction as to matter of the place from which the exposure is consummated, for even a semi-private place such as the garage herein involved, could become in the eyes of the law, a place of public exposure, if there are persons in view, or sight to see it, and *who are annoyed thereby.*" (Emphasis added)

In a special concurring opinion two members of the Court held as follows:

> "It should be emphasized that the only evidence in the record to sustain the conviction was the testimony of Mrs. Norris concerning her observance of the accused who motioned to her while he was naked and standing near the small door in the back of the garage while she was hanging some clothes on a line.

\*　　\*　　\*　　\*　　\*　　\*

> "Under the statute, before the defendant could be convicted, one of two things must occur. First, the exposure of his person must be in a public place. Second, if not in a public place, there must be other persons present who are offended or annoyed by the exposure.

> "In the instant case there is no contention that the accused exposed himself in a public place and in order for the conviction to be sustained, it must be on the theory that the exposure of his person was at a place where there were other persons present who were offended or annoyed thereby."

█ In the instant case, defendant's performance was held in a place shielded from public view and was observed by an audience which had been screened as to legal age. The audience had been advised by a large sign and a register that there was a "nude performance inside" and that "if nudity offends you, do not enter." There is no evidence in the record to reflect that the audience was in anyway offended or annoyed with the exception of the police officers. They attended the performance in their official capacity pursuant to the instructions of their superiors to make an arrest if a nude performance did take place. One of the officers in response to a question by the District Attorney did state that he found the act offensive.

This Court, however, holds that the State did not meet its burden of proving that defendant made a wilful, intentional, lewd exposure of her person, or private parts thereof, in a place where there were other persons present who were offended or annoyed thereby. The testimony of the police officer, a veteran of the Oklahoma City vice squad, is not sufficient, under these circumstances, to meet the State's burden of proof.

Defendant further contends that the applicable Oklahoma statutory law required,

by statutory exception to § 1021, found in § 1021.1, that obscenity standards must be imported into a case where the act of indecent exposure charged occurred in the context of a theatrical dance performance.

Section 1021.1 of Title 21 provides as follows:

"This Act shall not apply to persons who may possess or distribute obscene matter or participate in conduct otherwise prescribed by this Act, when such possession, distribution, or conduct occurs in the course of law enforcement activities, or in the course of bona fide scientific education or comprehensive research or study, or bona fide objects of art or artistic pursuits, or like circumstances or justification, where the possession, distribution or conduct is not related to the subject matter's appeal to prurient interest."

Defendant contends that § 1021.1 expresses a clear legislative intent that an alleged violation concerning nudity arising out of an artistic pursuit must be measured by obscenity standards as defined by the United States Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L. Ed.2d 1498, and subsequent decisions, and that when the State of Oklahoma failed to offer any evidence relevant to those standards, defendant's demurrer to the evidence should have been sustained.

■ That a dance before a live audience is an artistic pursuit cannot be denied. In In re Giannini, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P.2d 535, the Supreme Court of California held that a performance of a dance for an audience constitutes a method of expression that, in the absence of proof of obscenity, warrants the protection of the First Amendment.

In the very recent case of Yauch v. State, 19 Ariz.App. 175, 505 P.2d 1066 (1973), the Arizona Court struck down an ordinance of the City of Tucson prohibiting nudity on the stage of night clubs, bars, cabarets and theatres, holding as follows:

"Dancing is a form of expression and communication. In primitive cultures and ancient civilizations dance was intertwined with all aspects of life. Birth, circumcision, the consecration of maidens, marriage, death, planting and harvest, the celebrations of chieftains, hunting, war, feasts, the changes of the moon, and sickness, all involved the dance. Dances having a sexual message are not new to man. The tribal dances of late Neolithic cultures contained a vivid sexual content. Curt Sachs, World History of the Dance, W. W. Norton & Co., Inc., 1963, p. 216. Dance was and still is practiced among primitive cultures to enact the tribal creation story, important events in the history of the tribe, war, the bravery of its warriors, and sorrow or happiness for departed ancestors. The primitive mode of dance is still being performed, in perhaps a more refined manner, by the modern 'tribes' in which we live. One cannot observe modern dance as evolved by Isadora Duncan and Martha Graham without sensing the sexual overtone of its content.

\* \* \*

"We must also observe that the thrust of the City's ordinances cuts much deeper than the superficial question posed by the case at hand. The theater has historically been the arena for social and political comment. The entertainment need not be 'in proscenium' to constitute a 'theatrical performance'. Cf., Schacht v. United States, 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970). The state and setting of a bar or nightclub may be more plebeian than the 'haute grandeur' of the ballet stage, but it is 'theater' nevertheless. To allow the government to censure or prohibit performances that are not obscene or do not present a clear and present danger would be devastating to the exercise of the free exchange of ideas. The government is not the arbiter elegantiarum (the supreme authority in matters of taste)—chacun à son gout."

We, therefore, agree with defendant's contention that a dance performed is a theatrical or artistic pursuit. The trial court should have instructed with respect to the statutory exception, and the State should have presented evidence of obscenity according to the standards set out in the *Roth* case and the more recent cases of the United States Supreme Court.

Further, we recommend that cities and municipalities in the State of Oklahoma, under their licensing powers, pass ordinances regulating this type of conduct in bars and private clubs. We also recommend that the legislature, when it reconvenes, enact laws authorizing the Oklahoma Alcoholic Beverage Control Board to license and regulate private clubs where liquor is served from the customer's bottle. See California et al. v. LaRue et al., 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972).

For the reasons set out above, the judgment and sentence rendered against defendant, Susanne Marie Haines, is, accordingly,

Reversed with directions to dismiss.